**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

**CONNIE ESSMYER,**

      Plaintiff,

v.

**HUELSKAMP LAW, LLC,**

      Defendant.

Case No.   1:22-cv-00140-SNLJ

**PLAINTIFF'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS**
**IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT ON HER**
**FAIR DEBT COLLECTION PRACTICES ACT CLAIMS**

COMES NOW Plaintiff Connie Essmeyer ("Connie"), and for her Statement of Uncontroverted Material Facts in Support of Her Motion for Partial Summary Judgment states as follows:

***The Original Judgment***

1. Perry County Memorial Hospital ("Perry") provided Connie with medical care for personal, family, or household purposes in 2014. Exhibit 11, Essmyer Deposition pp. 12–14.

2. On May 21, 2019, Perry, represented by Defendant Huelskamp Law, LLC, filed a debt collection suit against Connie. Exhibit 1, Petition.

3. On September 12, 2019, the Court entered judgment against Connie and in favor of Perry in the amount of $9,351.14; there were no taxed costs. Exhibit 2, Judgment.

4. Between September 12, 2019, and July 30, 2020, Connie paid $1,016.61 toward the total balance due under the judgment. Exhibit 3, First Garnishment.

***Huelskamp Files The First Garnishment,***
***Makes Multiple Errors to Overstate the Debt***

5. On July 30, 2020, Huelskamp submitted his first garnishment application and order ("First Garnishment") to the court. Exhibit 3, First Garnishment.

| MEMORIAL HOSPITAL | vs. | $9,351.14 | | (Date File Stamp) |
|---|---|---|---|---|
| Respondent(s):<br>CONNIE ESSMYER<br>JOSEPH ESSMYER | | Please Issue: Garnishment<br>For: ☐ Bank Account ☐ Bond ☑ Wages<br>☐ Other: _____ | | Requested Return/End Date:<br>☐ 30 Days  ☐ 60 Days  ☐ 90 Days<br>☐ 120 Days  ☐ 150 Days  ☐ 180 Days<br>☑ Continuous (for wages only) |

**Garnishment Application and Order**
(This form must be completed in full or your request will be returned unprocessed.)

| To (County/City of St. Louis): CERTIFIED MAIL | Amount Remaining Unpaid (To be completed by Applicant) | |
|---|---|---|
| Debtor Name/Address: CONNIE ESSMYER<br>11212 STATE HWY C<br>STE. GENEVIEVE, MISSOURI 63670 | Judgment Balance<br>Total amount of the judgment awarded on the day judgment is entered including, but not limited to, principal, prejudgment interest, and all costs and/or fees. | $ 9,351.14 |
| Debtor SSN (last four digits): XXX-XX- 6045 | Post Judgment Interest | $ 750.11 |
| **Garnishee Name and Address:**<br>PIVA GROUP NORTH AMERICA<br>ATTN: PAYROLL<br>5 TRAUTMAN INDUSTRIAL COURT<br>STE. GENEVIEVE, MISSOURI 63670<br>Garnishee ID # (court use only): _____ | Post Judgment Costs | $ |
| | Service Fee for this Writ | $ 8.35 |
| | Garnishment Clerk Fee Surcharge | $ 10.00 |
| | Taxes | $ |
| Creditor: PERRY COUNTY MEMORIAL HOSPITAL | Child Support/Maint under 12 wks. | $ |
| Attorney: ROBERT D. HUELSKAMP | Child Support/Maint over 12 wks. | $ |
| Missouri Bar No.: 32319 | Other: _____ | $ |
| A judgment was entered on the above referenced date and remains unsatisfied. | Less Credits | ($ 1,016.61) |
| The garnishor knows or has reason to believe the garnishee is indebted to debtor. The garnishee is obligated to make periodic payments to debtor, or the garnishee has control/custody of money and/or bonds belonging to debtor.<br>Signature: _____<br>Date: 7/30/2020<br>Address & Telephone Number:<br>PO BOX 506<br>STE. GENEVIEVE, MO 63670<br>(573)883-5793 | **TOTAL DUE** | $ 9,102.99 |
| | Instructions for Service and/or Garnishee: Include applicable instructions.<br><br>PLEASE WITHHOLD WAGES, SALARY, COMMISSIONS, BONUSES, PAY, PROFIT SHARING, CASH BENEFITS OR OTHER INCOME PAYABLE TO DEBTOR.<br><br>DEDUCT AMOUNTS AT 25%. | |

**Requested by Applicant**
Make payments to: ☑ Court ☐ Attorney    Make Checks Payable To: PERRY COUNTY CIRCUIT COURT
Mail Funds To: 15 W. STE. MARIE ST., PERRYVILLE, MO 63775

**Writ of Garnishment** (To be completed by Court Clerk)
The State of Missouri to the Sheriff of any County in the State of Missouri
Because a judgment was entered against the above debtor in this court and there is a balance, accrued interest, and costs as stated above unpaid from said judgment, you are commanded to execute this writ by following the instructions on the reverse side of this writ and on the return date shown below to certify to this court how you executed this writ.

| (Seal) | Issuing County: | Document ID / Garn Number: |
|---|---|---|
| | Issue Date: | Return Date (if applicable): |
| | Issued By (Clerk): | |
| | Court Address: | |

6. The First Garnishment was labeled as 20-GARN-935. See the garnishments tab of case no. 19PR-AC00283 and Exhibit 4, First Garnishment Payments.

7. With no payment whatsoever from Connie, the maximum interest accrual from the date of the judgment to the July 30, 2020 First Garnishment was $742.84:

2

 

*See* Exhibit 9A, First Interest Calculation.

8.  Huelskamp, rather than reporting $742.84 in interest was due, reported to Connie and the court that interest had accrued in the amount of $750.11. Exhibit 3, First Garnishment. This mistake overstated the amount of interest owed and therefore overstated the debt amount. Exhibit 3, First Garnishment; Exhibit 9A, First Interest Calculation.

9.  From September 12, 2019 to June 30, 2020 Connie's payments totaling $1,016.61 would have significantly paid down the principal amount of the judgment.  Exhibit 3, First Garnishment.

10. This is because the maximum accrued interest of $742.84 was hundreds of dollars less than the $1,016.61 Connie paid.  Exhibit 3, First Garnishment; Exhibit 9A, First Interest Calculation; Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9.

11. Even if Connie had paid the entire $1,016.61 on July 30, 2020, the very day of the First Garnishment, accrued interest in the amount of $742.84 would be paid in its entirety and the principal amount of the judgment would be reduced by $273.77 to $9,077.37. Exhibit 3, First Garnishment; Exhibit 9A, First Interest Calculation; Exhibit 12, Plaintiff's

Interrogatory Responses, at Interrogatory No. 9.

12. When the $8.35 service fee and $10 garnishment clerk fee surcharge (both from Exhibit 3) are added to this amount, the maximum principal balance that could be due (and that could accrue interest) on July 30, 2020 was $9,095.72, not the $9,102.99 that Huelskamp reported on the First Garnishment. Exhibit 3, First Garnishment; Exhibit 9A, First Interest Calculation; Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9. As the bulk of the $1,016.61 would have been received far earlier than July 30, 2020, more principal would have been paid off and the true balance is likely far lower than the maximum possible balance of $9,095.72. Id.

13. Huelskamp, rather than report a balance due of $9,095.72, reported the balance due as $9,102.99. This is an error of at least $7.27 in Huelskamp's favor, and constitutes an amount that Connie could not possibly have owed. Exhibit 3, First Garnishment; Exhibit 9A, First Interest Calculation; Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9.

14. Huelskamp actually extracted garnishment payments from Connie after the First Garnishment. Exhibit 4, First Garnishment Payments.

15. Garnishment payments first pay down costs, then interest, and then finally principal. Mo. Rev. Stat. § 408.040.

16. Between July 30, 2020, and May 24, 2021, Huelskamp garnished Connie's wages in the total amount of $2,271.05. Exhibit 4, First Garnishment Payments. Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9. Included in this amount collected were the overstated interest and principal amounts identified above. Id.

*Huelskamp Files The Second Garnishment,*
*Makes Multiple Errors to Overstate the Debt*

17. On May 21, 2021, Huelskamp submitted his second garnishment application and order ("Second Garnishment") to the court, labeled as 21-GARN-542. Exhibit 5, Second Garnishment. See the garnishments tab of case no. 19PR-AC00283 and Exhibit 7, Second Garnishment Payments.

| MEMORIAL HOSPITAL | vs. | Original Amount of Judgment: $9,351.14 | | (Date File Stamp) | | |
|---|---|---|---|---|---|---|
| Respondent(s): CONNIE ESSMYER JOSEPH ESSMYER | | Please Issue: Garnishment For: ☐ Bank Account ☐ Bond ☑ Wages ☐ Other: _____ | | Requested Return/End Date: ☐ 30 Days ☐ 60 Days ☐ 90 Days ☐ 120 Days ☐ 150 Days ☐ 180 Days ☑ Continuous (for wages only) | | |

**Garnishment Application and Order**
(This form must be completed in full or your request will be returned unprocessed.)

| To (County/City of St. Louis): STE. GENEVIEVE | Amount Remaining Unpaid (To be completed by Applicant) | |
|---|---|---|
| Debtor Name/Address: CONNIE ESSMYER 11212 STATE HWY C STE. GENEVIEVE, MISSOURI 63670 | Judgment Balance Total amount of the judgment awarded on the day judgment is entered including, but not limited to, principal, prejudgment interest, and all costs and/or fees. | $ 9,351.14 |
| Debtor SSN (last four digits): XXX-XX- 6045 | Post Judgment Interest | $ 634.73 |
| Garnishee Name and Address: PIVA GROUP NORTH AMERICA ATTN: PAYROLL 5 TRAUTMAN INDUSTRAIL COURT STE. GENEVIEVE, MISSOURI 63670 Garnishee ID # (court use only): _____ | Post Judgment Costs | $ |
| | Service Fee for this Writ | $ 8.40 |
| | Garnishment Clerk Fee Surcharge | $ 10.00 |
| | Taxes | $ |
| Creditor: PERRY COUNTY MEMORIAL HOSPITAL | Child Support/Maint under 12 wks. | $ |
| Attorney: ROBERT D. HUELSKAMP | Child Support/Maint over 12 wks. | $ |
| Missouri Bar No.: 32319 | Other: _____ | $ |
| A judgment was entered on the above referenced date and remains unsatisfied. | Less Credits | ($ 2,050.47) |
| | **TOTAL DUE** | **$ 7,953.80** |
| The garnishor knows or has reason to believe the garnishee is indebted to debtor, The garnishee is obligated to make periodic payments to debtor; or the garnishee has control/custody of money and/or bonds belonging to debtor. Signature: _____ Date: May 21, 2021 Address & Telephone Number: PO BOX 506 STE. GENEVIEVE, MO 63670 (573)883-5793 | Instructions for Service and/or Garnishee: Include applicable instructions. PLEASE WITHHOLD WAGES, SALARY, COMMISSIONS, BONUSES, PAY, PROFIT SHARING, CASH BENEFITS OR OTHER INCOME PAYABLE TO DEBTOR. DEDUCT AMOUNTS AT 25%. | |
| **Requested by Applicant** Make payments to: ☑ Court ☐ Attorney    Make Checks Payable To: PERRY COUNTY CIRCUIT COURT Mail Funds To: 15 W. STE. MARIE ST., PERRYVILLE, MO 63775 | | |

18. The Second Garnishment did not include the previously paid $1,016.61 as a credit. Exhibit 5, Second Garnishment.

19. At minimum, the Second Garnishment therefore overstated the total debt amount by $1,016.61. Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9.

5

20. In the Second Garnishment, Huelskamp credited Connie for $2,050.47—money that was garnished from Connie pursuant to the First Garnishment. Exhibit 4, First Garnishment Payments; Exhibit 5, Second Garnishment.

21. In the Second Garnishment, Huelskamp listed the total balance as of May 21, 2021 as $7,953.80. Exhibit 5, Second Garnishment.

22. Because the maximum possible balance owed on July 30, 2020 was $9,095.72 (SOF 12, *supra*), the maximum possible interest that could have accrued (even without any interim payments, which of course Huelskamp received) from July 30, 2020 to May 21, 2021 was $661.06:



See Exhibit 9B, Second Interest Calculation.

23. Assuming that all of Connie's $2,271.05 in payments were made on the latest possible day, May 21, 2021, the date of the Second Garnishment, the entirety of the $661.06 in accrued interest would have been paid in addition to $1,609.99 in principal repayments. Exhibit 7, Second Garnishment Payments; Exhibit 12, Plaintiff's Interrogatory Responses,

at Interrogatory No. 9.

24. Therefore, the maximum balance due was $7,485.73 plus $8.40 for service fees and $10 for the garnishment fee surcharge, for a grand total maximum possible balance of $7,504.13 as of May 21, 2021. Exhibit 7, Second Garnishment Payments; Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9.

25. Accordingly, the balance due that Huelskamp reported in the Second Garnishment of $7,953.80 is incorrect and overstates the true amount of the debt.  Exhibit 9B, Second Interest Calculation; Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9.

26. Between the date of the Second Garnishment and March 29, 2022, Huelskamp garnished Connie's wages in the amount of $4,776.86. Exhibit 6, Third Garnishment; Exhibit 7, Second Garnishment Payments; Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9.

27. At least part of this $4776.86 would have gone to pay down the overstated principal amount of the debt, as garnishment payments first pay down costs, then interest, and then finally principal.  Mo. Rev. Stat. § 408.040; Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9.

28. By the conclusion of the Second Garnishment, Connie paid Huelskamp $8,064.52 ($4,776.86 + $2,271.05 + $1,016.61). Exhibit 3, First Garnishment; Exhibit 4, First Garnishment Payments; Exhibit 5, Second Garnishment; Exhibit 6, Third Garnishment; Exhibit 7, Second Garnishment Payments; Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9.

***Huelskamp Files The Third Garnishment,
Makes Errors that Overstate the Debt***

29. On April 18, 2022, Huelskamp submitted his third garnishment application and order ("Third Garnishment") to the court, labeled as 22-GARN-533. Exhibit 6, Third Garnishment. See the garnishments tab of case no. 19PR-AC00283 and Exhibit 8, Third Garnishment Payments.

| Respondent(s): CONNIE ESSMYER JOSEPH ESSMYER | Please Issue: Garnishment For: ☐ Bank Account ☐ Bond ☑ Wages ☐ Other: _____ | Requested Return/End Date: ☐ 30 Days  ☐ 60 Days  ☐ 90 Days ☐ 120 Days ☐ 150 Days ☐ 180 Days ☑ Continuous (for wages only) |
|---|---|---|

**Garnishment Application and Order**
(This form must be completed in full or your request will be returned unprocessed.)

| To (County/City of St. Louis): STE. GENEVIEVE | Amount Remaining Unpaid (To be completed by Applicant) | |
|---|---|---|
| Debtor Name/Address: CONNIE ESSMYER 11212 STATE HWY C STE. GENEVIEVE, MISSOURI 63670 | Judgment Balance Total amount of the judgment awarded on the day judgment is entered including, but not limited to, principal, prejudgment interest, and all costs and/or fees. | $ 9,351.14 |
| Debtor SSN (last four digits): XXX-XX-6045 | Post Judgment Interest | $ 1758.95 |
| Garnishee Name and Address: PIVA GROUP NORTH AMERICA ATTN: PAYROLL 5 TRAUTMAN INDUSTRAIL COURT STE. GENEVIEVE, MISSOURI 63670 Garnishee ID # (court use only): _____ | Post Judgment Costs | $ 18.40 |
| | Service Fee for this Writ | $ 10.85 |
| | Garnishment Clerk Fee Surcharge | $ 10.00 |
| | Taxes | $ |
| Creditor: PERRY COUNTY MEMORIAL HOSPITAL | Child Support/Maint under 12 wks. | $ |
| Attorney: ROBERT D. HUELSKAMP | Child Support/Maint over 12 wks. | $ |
| Missouri Bar No.: 32319 | Other: _____ | $ |
| A judgment was entered on the above referenced date and remains unsatisfied. | Less Credits | ($ 4776.86 |
| | **TOTAL DUE** | **$ 6372.48** |
| The garnishor knows or has reason to believe the garnishee is indebted to debtor. The garnishee is obligated to make periodic payments to debtor, or the garnishee has control/custody of money and/or bonds belonging to debtor. Signature _____ Date: APRIL 18, 2022 Address & Telephone Number: PO BOX 506 STE. GENEVIEVE, MO 63670 (573)883-5793 | Instructions for Service and/or Garnishee: Include applicable instructions. PLEASE WITHHOLD WAGES, SALARY, COMMISSIONS, BONUSES, PAY, PROFIT SHARING, CASH BENEFITS OR OTHER INCOME PAYABLE TO DEBTOR. DEDUCT AMOUNTS AT 25%. | |
| Requested by Applicant Make payments to: ☑ Court ☐ Attorney   Make Checks Payable To: PERRY COUNTY CIRCUIT COURT Mail Funds To: 15 W. STE. MARIE ST., PERRYVILLE, MO 63775 | | |

30. In the Third Garnishment, Huelskamp credited Connie for $4,776.86 in total payments. Exhibit 6, Third Garnishment. This misstates the true amount of Connie's payments by thousands of dollars. Exhibit 3, First Garnishment; Exhibit 4, First Garnishment Payments; Exhibit 5, Second Garnishment; Exhibit 6, Third Garnishment; Exhibit 7, Second Garnishment Payments; Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9.

8

31. Huelskamp identified the post-judgment interest as being $1,758.95 in the Third Garnishment. Exhibit 6, Third Garnishment.

32. Huelskamp's interest calculation was wrong by more than $1,000. Exhibit 9C, Third Interest Calculation.

33. If the maximum possible balance on May 21, 2021 was $7,504.13, then the maximum interest that could have accrued by April 19, 2022, the date of Huelskamp's next garnishment application, was $616.47, not the $1,758.95 Huelskamp was reporting in the Third Garnishment:

 

See Exhibit 9C, Third Interest Calculation.

34. With an interest amount of $616.47, the maximum debt balance would be $8,120.60 without any payments.  Exhibit 9C, Third Interest Calculation; Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9.

35. Once again, assuming all of the $4,776.86 Huelskamp garnished from Connie between the Second and Third Garnishments was received on the date of the Third Garnishment, April 19, 2022, the maximum balance owed, after $10.85 in service fees and the $10

9

garnishment surcharge, would have been $3,364.59. Exhibit 9C, Third Interest Calculation.

36. In the Third Garnishment, Huelskamp inflated this balance by thousands of dollars, claiming that Connie owed $6,372.48.  Exhibit 6, Third Garnishment.

37. In the Third Garnishment, Huelskamp included $18.40 in post judgment costs. Exhibit 6, Third Garnishment.

38. The record reflects that Huelskamp did not file a bill of costs for the post judgment costs and a clerk did not tax costs in that amount. Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9. See publicly available docket of case no. 19PR-AC00283.

39. Between May 23, 2022 and October 11, 2022, Huelskamp garnished Connie for an additional $1,667.84. Exhibit 8, Third Garnishment Payments.

40. Because garnishment payments are first applied to costs and then interest, Connie paid the excessive interest and untaxed cost amounts discussed above. Mo. Rev. Stat. § 408.040; Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9.

### Connie Asks Huelskamp to Explain, Then Hires Counsel to Quash the Garnishment

41. By the Third Garnishment, Huelskamp was claiming that Connie owed about three thousand dollars more than Connie could have possibly owed.  SOF 29–40, *supra*.

42. Connie was confused regarding the amounts due and owing under the judgment (Exhibit 10, Huelskamp Deposition p. 49), so Connie met with Huelskamp in person to inquire about the status of her debt. Exhibit 10, Huelskamp Deposition p. 57–58; Exhibit 11, Essmyer Deposition pp. 36–38.

43. Connie called Huelskamp multiple times to learn more about the status of her debt and

did not receive any explanation for the calculations of the current amount due and owing under the judgment. Exhibit 11, Essmyer Deposition pp. 39–41.

44. Connie hired and became indebted to her attorney for the amount of $1,215 to quash the ongoing garnishment because of the numerous errors (all in Huelskamp's favor) in the garnishment applications. Exhibit 12, Plaintiff's Interrogatory Responses, at Interrogatory No. 9; Exhibit 13, Declaration of Richard A. Voytas, Jr.

45. As a result of Huelskamp's conduct, Connie became frustrated and anxious that the garnishments were not being calculated and collected correctly. Exhibit 11, Essmyer Deposition pp. 48–49, 55.

### *Huelskamp Deposition*

46. Robert Huelskamp, owner of Defendant Huelskamp Law, LLC, signed and filed the First Garnishment without understanding from whence the numbers reported on the face of the garnishment came:

> So now I will turn to the documents that I have labeled as Plaintiff's Exhibit Number 3, which should be the three garnishments in this case. I'll begin with the garnishment that the front page is Defendant's 0004 that has the date of 7/30/2020 on it.
>
> You previously identified, Mr. Huelskamp, that that is your signature in the signature block of this garnishment. Is that correct?
>
> A    Yes.

Exhibit 10, Robert Huelskamp Deposition, p. 84.

Q    The next number that is reported, it says less credits, and it states $1,016.61.  Is that correct?

A    **That's what it says.**

Q    And how would that number be calculated and input into the form?

A    **I don't know.**

Q    Is that a number that exists somewhere in the accounting system?  Is that -- is that a number that is kept in a separate document in your office? How -- how would I know the credits on an account?

A    **I don't know where that number came from.**

Q    And at the bottom it says total due $9,102.99.  Is that correct?

A    **That's what it says.**

Q    And do you know where that number comes from?

A    **I didn't do the math, so at this moment -- so I assume it's calculated based on those numbers above it.**

Exhibit 10, Robert Huelskamp Deposition, pp.86–87.

47. Robert  Huelskamp,  owner  of  Defendant  Huelskamp  Law,  LLC,  signed  and  filed  the

12

Second Garnishment without understanding from whence the numbers reported on the face of the garnishment came:

Q    Okay.  I'm going to move now to it's 8, Defendant's 0008, which should be the May 21st, 2021 garnishment application.

And I believe, Mr. Huelskamp, that you previously stated that the signature that appears on this May 21, 2021 dated garnishment is yours.  Is that correct?

A    It is.

Q    And we're going to, unfortunately, go through the side numbers once again.  So as far as the judgment balance, that states $9,351.14.

Where did that number come from?

A    **It appears to be the judgment amount from the September 2019 judgment.**

Q    And the next item is post-judgment interest, and it is reported as $634.73.

Do you know where that number comes from?

A    It's just -- no.

Q    And for the service fee for this writ it states $8.40.

Based on your previous answer, is that the cost of mailing this by certified mail?

A    I would imagine.

Q    The next reported number on here is less credits of $2,000 -- excuse me -- $2,050.47.  Is that correct?

A    That's what it says.

Q    And where does this number come from?

A    I don't know.

Q    And under total due it states $7,953.80.  Is that correct?

A    That's what it says.

Q    And what does that number come from?

A    I don't know.

Exhibit 10, Robert Huelskamp Deposition, pp.87–88.

48. Robert Huelskamp, owner of Defendant Huelskamp Law, LLC, signed and filed the Third Garnishment without understanding from whence the numbers reported on the face of the garnishment came:

14

Q    I'll, then, turn to Defendant's 0012, which is the April 18th, 2022 dated garnishment application.

And, Mr. Huelskamp, I believe, yet again, and for the last time, that you stated that the signature that appears on this garnishment application is yours.  Is that correct?

A    **It is my signature, yes.**

Q    On this document there are some

computer-entered numbers and some handwritten numbers.

Does that seem like a fair characterization?

A    Yes.

Q    Are -- is that your handwriting that wrote the numbers in that column?

A    It is not.

Q    Yet again, we will start with the judgment balance which reads $9,351.14.  Is that correct?

A    That's what it says.

Q    And where did that number come from?

A    It would be the judgment entered on September 12th, 2019.

Q    And for post-judgment interest it reports $1,758.95.  Is that correct?

A    That's what it says.

Q    And where does that number come from?

A    I don't know.

Q    For post-judgment costs it states $18.40.

Where does that number come from?

A    I don't know.

Q    It next states service fee for this writ and it states $10.85.

Where does that number come from?

16

A     I would imagine that was the certified letter.

Q     And under less credits it states $4,776.86. Is that correct?

A     That's what it says.

Q     And where did that number come from?

A     I -- I didn't do it, so I don't know.

Q     And under total due it states $6,372 -- excuse me -- and 48 cents. Is that correct?

A     It does say that.

Q     And where does that number come from?

A     Again, I didn't calculate it, so I don't know.

Exhibit 10, Robert Huelskamp Deposition, pp.88–90.

49. Robert Huelskamp, owner of Defendant Huelskamp Law, LLC, participates routinely in debt collection of consumer debts:

Q     And is -- are you currently the principal of Huelskamp Law, LLC?

A     I'm the only member.

Exhibit 10, Robert Huelskamp Deposition, p. 6.

17

Q    And when you say collection work, is that debt collection for clients of yours that are creditors?

A    As opposed to myself, or --

Q    Correct.

A    Yeah.  I -- I do work for various companies and entities that have debt owed to them.

Q    How long would you say that you've been doing debt collection?

A    Mr. Rottler was doing it when I joined with him in 1996, and I probably immediately started helping him with those type of things.  So I -- I did not do much of it before that date, if any.

Q    But since 1996 you've been practicing in the debt collection field, I'm sure learning more every year as you go along.

A    I've been filing cases in that regard and otherwise attempting to collect debts probably since, yeah -- or my firm did for sure and -- yes.

Q    All right.  Does your firm offer -- I guess in my opinion -- correct me if I'm wrong -- I

18

kind of view debt collection as some firms are able to file a case and get it to a judgment, and then they might pass it off.  And then other firms will maybe accept a judgment and then try to collect on that.

Does Huelskamp Law, and previously Rottler and Huelskamp, were they able to perform both of those tasks?  One of those tasks?  What does -- what's your usual -- the usual way of collecting on the debts?

A    We don't sell judgments and debts.  We do it ourselves to the extent possible.

Q    So a typical debt collection case for you would be you file it, you get a judgment.  And then depending on the relationship you have with your client, you're set up to then collect on that judgment?

A    We will do that work to collect on the judgment, yes.

Exhibit 10, Robert Huelskamp Deposition, pp. 9–10.

A    Over the years I reviewed a lot of various articles on debt collection.  I can't point you to any specific.

Exhibit 10, Robert Huelskamp Deposition, p. 13.

19

Q    For the actual debt collection that Huelskamp Law, LLC conducts, is that something that is performed by you?  Performed by your admins?  Performed by the interns?  Who -- who is that -- their job to handle the debt collection aspects of the case?

A    I guess we're all involved in it.  That's why I hire administrative assistants.

Exhibit 10, Robert Huelskamp Deposition, p. 14.

A    They bring me questions all day long.

Q    Can you give us a sample of what issues you can remember being brought to you and you discussing?

A    In relation to what?

Q    To debt collection in general.

A    Debt collection issues.  Just what happens when we get an account, what needs to be done at that point.  What happens when we don't get a response, what needs to be done at that point.  What happens when we need to file a Petition, what needs to be done at that point.  I mean, so on and so forth until we get the judgment even.  Then there's stuff to be done then.

Now, I can't say I remember that we did that -- the whole thing all the way through on every -- when it came time to -- for debt collection matters.

Exhibit 10, Robert Huelskamp Deposition, p. 19.

Q    How frequently do debtors have one-on-one conversations with you?

A    All the time.

Exhibit 10, Robert Huelskamp Deposition, p. 58.

Q    And can you tell us what this statute is?

A    **It appears to be part of the FDCPA.**

Q    And from everything you've stated up until this point I think you would agree -- but correct me if I'm wrong -- that this statute applies to you as a debt collector as you perform debt collection for your clients.  Is that correct?

A    **I try to adhere to this statute in my actions as -- working on behalf of my clients.**

Q    So when you say you try to adhere to it, do you think this is a controlling statute over you, or is this a statute that is meant to guide your actions in some way?

MR. HUNKINS:  Object to the form.

A    **Yeah.  I -- I don't --**

Q    (By Mr. Christian) Mr. Huelskamp, are you required to follow this law as a debt collector?

A    **You're asking me if, in fact, I fall under the category of debt collector as per the statute?**

Q    We can start there, yes.

Are you a debt collector under the FDCPA?

MR. HUNKINS:  I'll object.  It calls for a legal conclusion.

But you can answer.

A    Yeah, I -- I'm not absolutely ready to state one hundred percent, but probably.  More likely than not.

Q    (By Mr. Christian) Are -- in your debt collection, which you've admitted occurs at your practice, are you collecting on debts that you own?

A    That I own?

Q    That they are debts owed to Robert -- excuse me -- to Huelskamp Law, LLC?

A    I have tried to collect on debts that are owed to the LLC.

Q    Do you collect on debts that are owed to entities that are not Huelskamp Law, LLC?

A    I think that's why we're here, isn't it?

Q    Are you affiliated in any way with Perry County Memorial Hospital beyond the attorney/client relationship?

A    No.

Q    You have no interest in or otherwise sit on a board of Perry County Memorial Hospital?

A    That is correct.

Q    And you collect debts that are owed to Perry County Memorial Hospital.  Is that correct?

A    Yes.

Q    And in your pursuit of collecting the debt

23

owed to Perry County Memorial Hospital you send
demands/dunning letters, you file Petitions, you
receive judgments, you then do post-judgment
collection on those judgments.  Is that correct?

**A**    **That is true, in general, yes.**

Exhibit 10, Robert Huelskamp Deposition, pp. 69–71.

Respectfully submitted,

**VOYTAS LAW, LLC**

By:    /s/ Richard A. Voytas, Jr.
Richard A. Voytas, Jr., #52046
David A. Weber, #70409
Caleb G. Christian, #70830
7321 S. Lindbergh Blvd., Ste. 400
St. Louis, MO  63125
Phone: 314.380.3166
Email:  rick@voytaslaw.com
david@voytaslaw.com
caleb@voytaslaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically with the United States District Court for the Eastern District of Missouri, this 24 day of November, 2023, with notice of case activity generated and sent electronically to all counsel of record.

/s/ Richard A. Voytas, Jr.

25