**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

**CONNIE ESSMYER,**

     Plaintiff,

v.

**HUELSKAMP LAW, LLC,**

     Defendant.

Case No.   1:22-cv-00140-SNLJ

**<u>PLAINTIFF'S RESPONSES DEFENDANT HUELSKAMP LAW, LLC'S</u>**
**<u>FIRST SET OF INTERROGATORIES</u>**

**<u>INTERROGATORIES</u>**

1.    <u>ANSWERING PERSON</u>

Please identify:

    a.  The name and address of each person or persons answering these Interrogatories or supplying information or documents to assist in answering these Interrogatories; and

    b.  His/her relationship to the Plaintiff.

**<u>ANSWER:</u>** Plaintiff, with the assistance of the undersigned counsel.

2.    <u>BACKGROUND INFORMATION</u>

Please state:

    a.  Plaintiff's full name;

    b.  Any other name by which Plaintiff has been known, including maiden name and nicknames, and the date range each name was used;

    c.  Plaintiff's date of birth;

    d.  Plaintiff's social security number;

    e.  Physical and mailing address where Plaintiff currently resides and the dates of

#30308689 v1

residency;

f.  Any other address at which Plaintiff has lived during the past ten years;

g.  Whether Plaintiff has ever been married, including common law marriages, and if so, the name(s) of Plaintiff's spouse(s), the dates of each marriage, the status of each marriage (e.g. current, separated, divorced), the last known address, phone number, and e-mail address for each spouse; and whether any spouse is now deceased;

h.  Whether Plaintiff has ever been the member of a civil union, and if so, the name(s) of the other member to the union, the dates of each civil union, the status of each civil union (e.g. current, separated, divorced), the last known address, phone number, and e-mail address for each member; and whether any member is now deceased;

i.  The name, current address, phone number, and e-mail address of any boyfriend, girlfriend, and/or significant other whom Plaintiff is currently dating or was dating at the time of the Incident or filing suit; and

j.  Names and dates of birth of Plaintiff's children, and Plaintiff's custody as to each minor child.

**ANSWER:** Plaintiff objects to the request as overbroad and not reasonably calculated to lead to the discovery of admissible evidence; in addition, the request is objectionable because it is not proportionate to the needs of this case.  There is no indication that Plaintiff's marriage, spouse, significant others, children, union status, ten year address history, or social security information is remotely relevant to any claim or defense.  Subject to the objection, Plaintiff is Connie Essmyer.  She lives at ███████████████████████████; her date of birth is ██████; and the last four digits of her SSN are ████

3.    <u>FACT WITNESSES</u>

State the full name, address, phone number, and e-mail address of each person known or believed by Plaintiff, Plaintiff's representatives, or Plaintiff's attorney(s) who has information regarding the Incident or Plaintiff's injuries.

**ANSWER:** Defendant Huelskamp and unknown staff persons to whom he delegated

2

garnishment functions have knowledge about the math errors associated with the garnishment that led to Plaintiff being over-garnished, particularly Huelskamp's failure to credit Plaintiff's $1016.61 pre-2019 payments or $2271.05 in 2020 payments via the garnishment process. Defendant Huelskamp met with Plaintiff in person and discussed these issues and refused to be held accountable for any mistakes.  Upon information and belief, Defendant Huelskamp was apprising his client, Perry County Memorial Hospital, of all steps he took in the collection process and there are unknown persons at the Hospital who have knowledge of Huelskamp's collection efforts against Plaintiff.  Plaintiff is also a witness to all of the events listed in the Complaint, and she may be contacted through counsel.

4.      RETAINED EXPERT WITNESSES

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(b) please state the following for each retained expert witness whom You expect to call as an expert witness at trial:

   a.  Expert's full name;

   b.  Expert's current address;

   c.  Expert's current occupation & place of employment;

   d.  General nature of the subject matter on which the expert is expected to testify. In lieu of answering, You may produce a copy of any report or notes prepared by the expert, provided that such report and/or notes disclose all subject matters on which the expert is expected to testify;

   e.  Expert's qualifications to render an opinion as to the subject matter(s) identified in answer to paragraph (d) of this Interrogatory. In lieu of answering, You may produce a copy of the expert's most recent curriculum vitae, provided that it discloses all of the expert's qualifications; and

   f.  Expert's hourly deposition fee.

**ANSWER:** None at this time. Plaintiff reserves the right to supplement her answer to Interrogatory No. 4 pursuant to Fed. R. Civ. P. 26(e).

3

#30308689 v1

5.      NON-RETAINED EXPERT WITNESSES

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(c) please state the following for each non-retained expert witness, including a party, whom You expect to call as an expert witness at trial:

    a.   Expert's full name;

    b.   Expert's current address; and

    c.   Expert's field of expertise.

**ANSWER:** None at this time. Plaintiff reserves the right to supplement her answer to

Interrogatory No. 4 pursuant to Fed. R. Civ. P. 26(e).


6.      STATEMENTS

Are you aware of any statement made by Defendant regarding the occurrences mentioned in the petition, whether oral, written or recorded in any way, including, but not limited to, a stenographic, mechanical, electrical, audio, video, motion picture, photograph, or other recording, or transcription thereof, and, if so, state the following:

    (a) Date, place, and time taken;

    (b) Name and addresses of all persons connected with taking it;

    (c) Names and addresses of all persons present at the time it was taken;

    (d) Whether the statement was oral, written, shorthand, recorded, taped, etc.;

    (e) Was it signed?

    (f) Names and addresses of the persons or organizations under whose direction and upon whose behalf it was taken or made; and

    (g) Please attach an exact copy of the original of the statement, interview, report, film, or tape to your answers to these interrogatories; if oral, please state verbatim the contents thereof.

4

**ANSWER:** Plaintiff objects to the request as overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff is not in possession of these records, and does not know the precise dates of statements made by Defendant. Defendant is in possession of these records.

7.      COMMUNICATIONS

Please provide all communications between Defendant and/or Perry County Health System and yourself regarding the occurrences mentioned in the petition, whether oral, written or recorded in any way, including but not limited to e-mails, phone calls, texts messages, facsimiles, letters and/or in-person conversations, and, for each communication, state the following:

   a.   Date, place, and time of occurrence;

   b.   Name and address of all persons involved;

   c.   Name and address of all persons present;

   d.   Whether the communication was oral or written;

   e.   Was it signed?

   f.   Please attach an exact copy of the original communication to your answers to these interrogatories; if oral, please state verbatim the contents thereof.

**ANSWER:**   Plaintiff does not owe Perry County Health System.  Plaintiff is producing all documents in her possession that are responsive as to Perry County Memorial Hospital.

8.      E-MAIL ACCOUNTS

State whether Plaintiff used an e-mail account on or since the date of the Incident, and if so, state for each account:

   a.   The e-mail address;

   b.   Date Plaintiff began and ceased using the account;

#30308689 v1

    c.   Whether any such account was provided by or paid for by a person other than Plaintiff, and if so, the full name, address, phone number, and e-mail address of that person; and

    d.   Whether Plaintiff sent any e-mail messages regarding the Incident from such account.

**ANSWER:** Plaintiff objects to the request as overbroad and not reasonably calculated to lead to the discovery of admissible evidence; in addition, the request is objectionable because it is not proportionate to the needs of this case.  There is no indication that Plaintiff's email address(es) is remotely relevant to any claim or defense.  Subject to the objection, Plaintiff's email is ███████████████ .

9.      DAMAGES

Describe Plaintiff's physical, psychological, financial, and/or emotional injuries caused by, exacerbated by, sustained in, or otherwise arising out of the Incident; specifically including, but not limited to – monetary loss, loss of use of funds, embarrassment, stress, and anxiety. For each such injury, please state:

    a.   The exact amount of money lost;

    b.   Any limitations experienced as a result of the damage;

    c.   Any diagnosis communicated to Plaintiff as to any damage and the date of such communication;

    d.   Any financial difficulties or hardships resulting from the damage;

**ANSWER:**   On 9/12/19, Defendant obtained judgment in the amount of $9351.14 against Plaintiff.  The judgment bore 9% interest.  There were no taxed costs.  With no payment whatsoever from Plaintiff, the maximum interest accrual to 7/30/20 was $742.84.  Plaintiff did pay at least $1016.61 according to Defendant's own garnishment application dated 7/30/20.  On that form, Defendant's inability to perform basic math manifested for the first time, resulting in

6

#30308689 v1

significant errors in Defendant's favor.  On 7/30/20, via the garnishment form, Defendant reported to the court and Plaintiff that interest in the amount of $750.11.  In reality, Plaintiff's payments would have significantly paid down the principal amount of the judgment from 9/12/19 to 7/30/20.  Even if the entire $1,016.61 had been paid on 7/30/20, the very day of the garnishment application, accrued interest in the amount of $742.84 would be paid in its entirety and the principal amount of the judgment would be reduced by $273.77 to $9,077.37.  When the $8.35 service fee and $10 garnishment clerk fee surcharge are added to this amount, the maximum balance that could be due was $9,095.72.  As the bulk of the $1,016.61 would have been received far earlier than 7/30/20, more principal would have been paid off and the true balance is likely far lower than the maximum possible balance of $9,095.72.  Defendant Huelskamp, a debt collector regulated by the strict liability FDCPA, errantly reported the balance due as $9,102.99.  This is an error of at least $7.27 in Defendant's favor, and constitutes an amount that Plaintiff could not possibly have owed.  Between 8/4/20 and 5/10/21, Plaintiff paid, according to case.net records, a total of $2,271.05 to Defendant.  Because the maximum possible balance owed on 7/30/20 was $9,095.72, the maximum possible interest that could have accrued (even without any interim payments, which of course Defendant received) by 5/21/21 was $661.06.  Assuming that all of Plaintiff's $2,271.05 in payments were made on the latest possible day, 5/21/21, the date of Defendant's next garnishment application, the entirety of the $661.06 in accrued interest would have been paid in addition to $1,609.99 in principal repayments.  The maximum balance due was $7,485.73 plus $8.40 for service fees and $10 for the garnishment fee surcharge, for a grand total maximum possible balance of $7,504.13 as of 5/21/21.  Defendant's difficulty with math persisted through the garnishment application dated 5/21/21, where he credited only $2,050.47 in total payments despite the fact that Plaintiff had made at least

7

#30308689 v1

$1,016.61 + $2,271.05 = $3,287.66 in payments. Once again, Defendant made an egregious error in calculating the total balance due on the 5/21/21 garnishment form, wrongly reporting that Plaintiff still owed a total of $7,953.80, at least $449.27 more than Plaintiff could possibly have owed. The effect of these errors was that Plaintiff was paying hundreds of dollars in interest that she did not owe. Defendant's math errors continued, and were always in Defendant's favor. For example from 6/1/21 to 3/17/22, Defendant garnished $4,776.86 from Plaintiff. Thus, by 3/17/22, Plaintiff had paid Defendant a minimum total of $8,064.52. Plaintiff's HR records, which she is producing herewith, show that Plaintiff actually paid $8,147.66. If this is the true amount Plaintiff paid, Defendant's misstatements of the debt are even more egregious. If the maximum possible balance on 5/21/21 was $7,504.13, then the maximum interest that could have accrued by 4/19/22, the date of Defendant's next garnishment application, was $616.47 and the maximum debt balance could be $8,120.60 without any payments. Once again, assuming all payments were made on 4/19/2022, the $4,776.86 in payments would result in a maximum balance owed, after $10.85 in service fees and the $10 garnishment surcharge, of $3,364.59. On the 4/19/22 garnishment form, Defendant falsely and fraudulently inflated this balance by thousands of dollars, claiming that Plaintiff owed $6,372.48. On this same garnishment form, Defendant added $18.40 in "post judgment costs" that were false and illusory. Defendant never filed a bill of costs for any amount, and the circuit clerk never taxed any such costs in Defendant's favor. Undeterred by the rules, the law, or the rules of professional conduct, Defendant simply added this $18.40 to Plaintiff's balance due because he thought nobody was watching. Subsequently, Defendant garnished Plaintiff for another $1,667.84 according to case.net records. Because costs, then interest, and then principal are paid down (in that order), Plaintiff paid Defendant for the illicit $18.40 in "post judgment costs" in

8

#30308689 v1

addition to post-judgment interest that Plaintiff did not owe.  Plaintiff was forced to hire the undersigned counsel to try and quash the garnishment in 19PR-AC00283.  Fortunately, counsel was able to stop the garnishment.  For counsel's work in the state court case, Plaintiff is indebted to counsel for 2.7 hours of time at $450 per hour, totaling $1,215.

10.    <u>PAYMENTS</u>

Please provide an accounting of all payments you made to Defendant or Perry County Health System prior to issuance of the first garnishment order entered on August 4, 2020. For each payment, provide the:

      a.  Total payment amount; and

      b.  Date of the payment.

**ANSWER:** Plaintiff never owed Perry County Health System.

11.    <u>PAYMENTS</u>

Please provide an accounting of all payments you made to Defendant or Perry County Healthy System prior to issuance of the second garnishment order entered on June 1, 2021. For each payment, provide the:

      a.  Total payment amount; and

      b.  Date of the payment.

**ANSWER:** Plaintiff is not in possession of these records, and does not know the precise dates and amounts of payments.  Defendant is in possession of these records.  Plaintiff requested records from her HR department and is producing everything in her possession that shows the date and amount of all payments.

12.    <u>PAYMENTS</u>

9

Please provide an accounting of all payments you made to Defendant or Perry County Health System prior to issuance of the third garnishment ordered entered on Aprill 22, 2022. For each payment, provide the:

      a.   Total payment amount; and

      b.   Date of the payment.

**ANSWER:** Plaintiff never owed Perry County Health System.

13.    JUDGMENT

Provide the following information regarding the judgment entered against you and Joseph Essmyer on September 12, 2019 (Case No.: 19PR-AC00283):

      a.   Total Amount owed on judgment;

      b.   Amount owed to Perry County Health System; and

      c.   Amount owed in court fees.

**ANSWER:** Plaintiff never owed Perry County Health System.  With respect to the alleged debt at issue in this case, on 9/12/19, Defendant obtained judgment in the amount of $9351.14 against Plaintiff.  The judgment bore 9% interest.  There were no taxed costs. With no payment whatsoever from Plaintiff, the maximum interest accrual to 7/30/20 was $742.84.  Plaintiff did pay at least $1016.61 according to Defendant's own garnishment application dated 7/30/20.  On that form, Defendant's inability to perform basic math manifested for the first time, resulting in significant errors in Defendant's favor.  On 7/30/20, via the garnishment form, Defendant reported to the court and Plaintiff that interest in the amount of $750.11.  In reality, Plaintiff's payments would have significantly paid down the principal amount of the judgment from 9/12/19 to 7/30/20.  Even if the entire $1,016.61 had been paid on 7/30/20, the very day of the garnishment application, accrued interest in the amount of $742.84 would be paid in its entirety and the principal amount of the judgment

10

would be reduced by $273.77 to $9,077.37.  When the $8.35 service fee and $10 garnishment clerk fee surcharge are added to this amount, the maximum balance that could be due was $9,095.72.  As the bulk of the $1,016.61 would have been received far earlier than 7/30/20, more principal would have been paid off and the true balance is likely far lower than the maximum possible balance of $9,095.72.  Defendant Huelskamp, a debt collector regulated by the strict liability FDCPA, errantly reported the balance due as $9,102.99.  This is an error of at least $7.27 in Defendant's favor, and constitutes an amount that Plaintiff could not possibly have owed.  Between 8/4/20 and 5/10/21, Plaintiff paid, according to case.net records, a total of $2,271.05 to Defendant.  Because the maximum possible balance owed on 7/30/20 was $9,095.72, the maximum possible interest that could have accrued (even without any interim payments, which of course Defendant received) by 5/21/21 was $661.06.  Assuming that all of Plaintiff's $2,271.05 in payments were made on the latest possible day, 5/21/21, the date of Defendant's next garnishment application, the entirety of the $661.06 in accrued interest would have been paid in addition to $1,609.99 in principal repayments.  The maximum balance due was $7,485.73 plus $8.40 for service fees and $10 for the garnishment fee surcharge, for a grand total maximum possible balance of $7,504.13 as of 5/21/21.  Defendant's difficulty with math persisted through the garnishment application dated 5/21/21, where he credited only $2,050.47 in total payments despite the fact that Plaintiff had made at least $1,016.61 + $2,271.05 =  $3,287.66 in payments.  Once again, Defendant made an egregious error in calculating the total balance due on the 5/21/21 garnishment form, wrongly reporting that Plaintiff still owed a total of $7,953.80, at least $449.27 more than Plaintiff could possibly have owed.  The effect of these errors was that Plaintiff was paying hundreds of dollars in interest that she did not owe.  Defendant's math errors continued, and were always in Defendant's favor.  For example from 6/1/21 to 3/17/22, Defendant garnished $4,776.86 from Plaintiff.  Thus, by 3/17/22, Plaintiff had paid

11

Defendant a minimum total of $8,064.52. Plaintiff's HR records, which she is producing herewith, show that Plaintiff actually paid $8,147.66. If this is the true amount Plaintiff paid, Defendant's misstatements of the debt are even more egregious. If the maximum possible balance on 5/21/21 was $7,504.13, then the maximum interest that could have accrued by 4/19/22, the date of Defendant's next garnishment application, was $616.47 and the maximum debt balance could be $8,120.60 without any payments. Once again, assuming all payments were made on 4/19/2022, the $4,776.86 in payments would result in a maximum balance owed, after $10.85 in service fees and the $10 garnishment surcharge, of $3,364.59. On the 4/19/22 garnishment form, Defendant falsely and fraudulently inflated this balance by thousands of dollars, claiming that Plaintiff owed $6,372.48. On this same garnishment form, Defendant added $18.40 in "post judgment costs" that were false and illusory. Defendant never filed a bill of costs for any amount, and the circuit clerk never taxed any such costs in Defendant's favor. Undeterred by the rules, the law, or the rules of professional conduct, Defendant simply added this $18.40 to Plaintiff's balance due because he thought nobody was watching. Subsequently, Defendant garnished Plaintiff for another $1,667.84 according to case.net records. Because costs, then interest, and then principal are paid down (in that order), Plaintiff paid Defendant for the illicit $18.40 in "post judgment costs" in addition to post-judgment interest that Plaintiff did not owe. Plaintiff was forced to hire the undersigned counsel to try and quash the garnishment in 19PR-AC00283. Fortunately, counsel was able to stop the garnishment. For counsel's work in the state court case, Plaintiff is indebted to counsel for 2.7 hours of time at $450 per hour, totaling $1,215.

14.   FIRST GARNISHMENT: BALANCE

The first garnishment order states that, as of August 4, 2020, you owed a total amount of Nine Thousand One Hundred and Two Dollars and Ninety-Nine cents ($9,102.99) to Perry County Health System. If you contend this balance is inaccurate, describe the accurate amount

12

#30308689 v1

that you owed as of August 4, 2020.

**ANSWER:** Plaintiff never owed Perry County Health System. With respect to the alleged debt at issue in this case, on 9/12/19, Defendant obtained judgment in the amount of $9351.14 against Plaintiff. The judgment bore 9% interest. There were no taxed costs. With no payment whatsoever from Plaintiff, the maximum interest accrual to 7/30/20 was $742.84. Plaintiff did pay at least $1016.61 according to Defendant's own garnishment application dated 7/30/20. On that form, Defendant's inability to perform basic math manifested for the first time, resulting in significant errors in Defendant's favor. On 7/30/20, via the garnishment form, Defendant reported to the court and Plaintiff that interest in the amount of $750.11. In reality, Plaintiff's payments would have significantly paid down the principal amount of the judgment from 9/12/19 to 7/30/20. Even if the entire $1,016.61 had been paid on 7/30/20, the very day of the garnishment application, accrued interest in the amount of $742.84 would be paid in its entirety and the principal amount of the judgment would be reduced by $273.77 to $9,077.37. When the $8.35 service fee and $10 garnishment clerk fee surcharge are added to this amount, the maximum balance that could be due was $9,095.72. As the bulk of the $1,016.61 would have been received far earlier than 7/30/20, more principal would have been paid off and the true balance is likely far lower than the maximum possible balance of $9,095.72. Defendant Huelskamp, a debt collector regulated by the strict liability FDCPA, errantly reported the balance due as $9,102.99. This is an error of at least $7.27 in Defendant's favor, and constitutes an amount that Plaintiff could not possibly have owed. Between 8/4/20 and 5/10/21, Plaintiff paid, according to case.net records, a total of $2,271.05 to Defendant. Because the maximum possible balance owed on 7/30/20 was $9,095.72, the maximum possible interest that could have accrued (even without any interim payments, which of course Defendant received) by 5/21/21 was

$661.06. Assuming that all of Plaintiff's $2,271.05 in payments were made on the latest possible day, 5/21/21, the date of Defendant's next garnishment application, the entirety of the $661.06 in accrued interest would have been paid in addition to $1,609.99 in principal repayments. The maximum balance due was $7,485.73 plus $8.40 for service fees and $10 for the garnishment fee surcharge, for a grand total maximum possible balance of $7,504.13 as of 5/21/21. Defendant's difficulty with math persisted through the garnishment application dated 5/21/21, where he credited only $2,050.47 in total payments despite the fact that Plaintiff had made at least $1,016.61 + $2,271.05 = $3,287.66 in payments. Once again, Defendant made an egregious error in calculating the total balance due on the 5/21/21 garnishment form, wrongly reporting that Plaintiff still owed a total of $7,953.80, at least $449.27 more than Plaintiff could possibly have owed. The effect of these errors was that Plaintiff was paying hundreds of dollars in interest that she did not owe. Defendant's math errors continued, and were always in Defendant's favor. For example from 6/1/21 to 3/17/22, Defendant garnished $4,776.86 from Plaintiff. Thus, by 3/17/22, Plaintiff had paid Defendant a minimum total of $8,064.52. Plaintiff's HR records, which she is producing herewith, show that Plaintiff actually paid $8,147.66. If this is the true amount Plaintiff paid, Defendant's misstatements of the debt are even more egregious. If the maximum possible balance on 5/21/21 was $7,504.13, then the maximum interest that could have accrued by 4/19/22, the date of Defendant's next garnishment application, was $616.47 and the maximum debt balance could be $8,120.60 without any payments. Once again, assuming all payments were made on 4/19/2022, the $4,776.86 in payments would result in a maximum balance owed, after $10.85 in service fees and the $10 garnishment surcharge, of $3,364.59. On the 4/19/22 garnishment form, Defendant falsely and fraudulently inflated this balance by thousands of dollars, claiming that Plaintiff owed $6,372.48.

14

On this same garnishment form, Defendant added $18.40 in "post judgment costs" that were false and illusory. Defendant never filed a bill of costs for any amount, and the circuit clerk never taxed any such costs in Defendant's favor. Undeterred by the rules, the law, or the rules of professional conduct, Defendant simply added this $18.40 to Plaintiff's balance due because he thought nobody was watching. Subsequently, Defendant garnished Plaintiff for another $1,667.84 according to case.net records. Because costs, then interest, and then principal are paid down (in that order), Plaintiff paid Defendant for the illicit $18.40 in "post judgment costs" in addition to post-judgment interest that Plaintiff did not owe. Plaintiff was forced to hire the undersigned counsel to try and quash the garnishment in 19PR-AC00283. Fortunately, counsel was able to stop the garnishment. For counsel's work in the state court case, Plaintiff is indebted to counsel for 2.7 hours of time at $450 per hour, totaling $1,215.

## 15.    FIRST GARNISHMENT: PRIOR PAYMENTS

The first garnishment order indicates that the payments you made prior to August 4, 2020 totaled One Thousand and Sixteen Dollars and Sixty-One cents ($1,016.61). If you contend this amount is inaccurate, describe the accurate amount of total payments you made prior to August 4, 2020.

**ANSWER:** Defendant is in possession of this information; Plaintiff is without knowledge as to the precise amount but notes that her HR documents show more payments than reflected by case.net records.

## 16.    FIRST GARNISHMENT: INTEREST

The first garnishment order indicates that you owed Seven Hundred and Fifty Dollars and Eleven cents ($750.11) in post judgment interest as of August 4, 2020. If you contend this amount is inaccurate, describe the amount you owed in post judgment interest as of August 4, 2020.

**ANSWER:** On 9/12/19, Defendant obtained judgment in the amount of $9351.14 against Plaintiff. The judgment bore 9% interest. There were no taxed costs. With no payment whatsoever from Plaintiff, the maximum interest accrual to 7/30/20 was $742.84. Plaintiff did pay at least $1016.61 according to Defendant's own garnishment application dated 7/30/20. On that form, Defendant's inability to perform basic math manifested for the first time, resulting in significant errors in Defendant's favor. On 7/30/20, via the garnishment form, Defendant reported to the court and Plaintiff that interest in the amount of $750.11. In reality, Plaintiff's payments would have significantly paid down the principal amount of the judgment from 9/12/19 to 7/30/20. Even if the entire $1,016.61 had been paid on 7/30/20, the very day of the garnishment application, accrued interest in the amount of $742.84 would be paid in its entirety and the principal amount of the judgment would be reduced by $273.77 to $9,077.37. When the $8.35 service fee and $10 garnishment clerk fee surcharge are added to this amount, the maximum balance that could be due was $9,095.72. As the bulk of the $1,016.61 would have been received far earlier than 7/30/20, more principal would have been paid off and the true balance is likely far lower than the maximum possible balance of $9,095.72. Defendant Huelskamp, a debt collector regulated by the strict liability FDCPA, errantly reported the balance due as $9,102.99. This is an error of at least $7.27 in Defendant's favor, and constitutes an amount that Plaintiff could not possibly have owed. Between 8/4/20 and 5/10/21, Plaintiff paid, according to case.net records, a total of $2,271.05 to Defendant. Because the maximum possible balance owed on 7/30/20 was $9,095.72, the maximum possible interest that could have accrued (even without any interim payments, which of course Defendant received) by 5/21/21 was $661.06. Assuming that all of Plaintiff's $2,271.05 in payments were made on the latest possible day, 5/21/21, the date of Defendant's next garnishment application, the entirety of the $661.06 in

16

accrued interest would have been paid in addition to $1,609.99 in principal repayments. The maximum balance due was $7,485.73 plus $8.40 for service fees and $10 for the garnishment fee surcharge, for a grand total maximum possible balance of $7,504.13 as of 5/21/21. Defendant's difficulty with math persisted through the garnishment application dated 5/21/21, where he credited only $2,050.47 in total payments despite the fact that Plaintiff had made at least $1,016.61 + $2,271.05 = $3,287.66 in payments. Once again, Defendant made an egregious error in calculating the total balance due on the 5/21/21 garnishment form, wrongly reporting that Plaintiff still owed a total of $7,953.80, at least $449.27 more than Plaintiff could possibly have owed. The effect of these errors was that Plaintiff was paying hundreds of dollars in interest that she did not owe. Defendant's math errors continued, and were always in Defendant's favor. For example from 6/1/21 to 3/17/22, Defendant garnished $4,776.86 from Plaintiff. Thus, by 3/17/22, Plaintiff had paid Defendant a minimum total of $8,064.52. Plaintiff's HR records, which she is producing herewith, show that Plaintiff actually paid $8,147.66. If this is the true amount Plaintiff paid, Defendant's misstatements of the debt are even more egregious. If the maximum possible balance on 5/21/21 was $7,504.13, then the maximum interest that could have accrued by 4/19/22, the date of Defendant's next garnishment application, was $616.47 and the maximum debt balance could be $8,120.60 without any payments. Once again, assuming all payments were made on 4/19/2022, the $4,776.86 in payments would result in a maximum balance owed, after $10.85 in service fees and the $10 garnishment surcharge, of $3,364.59. On the 4/19/22 garnishment form, Defendant falsely and fraudulently inflated this balance by thousands of dollars, claiming that Plaintiff owed $6,372.48. On this same garnishment form, Defendant added $18.40 in "post judgment costs" that were false and illusory. Defendant never filed a bill of costs for any amount, and the circuit clerk

17

never taxed any such costs in Defendant's favor.  Undeterred by the rules, the law, or the rules of professional conduct, Defendant simply added this $18.40 to Plaintiff's balance due because he thought nobody was watching.  Subsequently, Defendant garnished Plaintiff for another $1,667.84 according to case.net records.  Because costs, then interest, and then principal are paid down (in that order), Plaintiff paid Defendant for the illicit $18.40 in "post judgment costs" in addition to post-judgment interest that Plaintiff did not owe.  Plaintiff was forced to hire the undersigned counsel to try and quash the garnishment in 19PR-AC00283.  Fortunately, counsel was able to stop the garnishment.  For counsel's work in the state court case, Plaintiff is indebted to counsel for 2.7 hours of time at $450 per hour, totaling $1,215.

17.     <u>SECOND GARNISHMENT: BALANCE</u>

The second garnishment order states that, as of June 1, 2021, you owed a total amount of Seven Thousand Nine Hundred and Fifty-Three Dollars and Eighty cents ($7,953.80) to Perry County Health System. If you contend this balance is inaccurate, describe the accurate amount that you owed as of June 1, 2021.

**ANSWER:** Plaintiff never owed Perry County Health System.  With respect to the alleged debt at issue in this case, on 9/12/19, Defendant obtained judgment in the amount of $9351.14 against Plaintiff.  The judgment bore 9% interest.  There were no taxed costs.  With no payment whatsoever from Plaintiff, the maximum interest accrual to 7/30/20 was $742.84.  Plaintiff did pay at least $1016.61 according to Defendant's own garnishment application dated 7/30/20.  On that form, Defendant's inability to perform basic math manifested for the first time, resulting in significant errors in Defendant's favor.  On 7/30/20, via the garnishment form, Defendant reported to the court and Plaintiff that interest in the amount of $750.11.  In reality, Plaintiff's payments would have significantly paid down the principal

amount of the judgment from 9/12/19 to 7/30/20.  Even if the entire $1,016.61 had been paid on 7/30/20, the very day of the garnishment application, accrued interest in the amount of $742.84 would be paid in its entirety and the principal amount of the judgment would be reduced by $273.77 to $9,077.37.  When the $8.35 service fee and $10 garnishment clerk fee surcharge are added to this amount, the maximum balance that could be due was $9,095.72.  As the bulk of the $1,016.61 would have been received far earlier than 7/30/20, more principal would have been paid off and the true balance is likely far lower than the maximum possible balance of $9,095.72.  Defendant Huelskamp, a debt collector regulated by the strict liability FDCPA, errantly reported the balance due as $9,102.99.  This is an error of at least $7.27 in Defendant's favor, and constitutes an amount that Plaintiff could not possibly have owed.  Between 8/4/20 and 5/10/21, Plaintiff paid, according to case.net records, a total of $2,271.05 to Defendant.   Because the maximum possible balance owed on 7/30/20 was $9,095.72, the maximum possible interest that could have accrued (even without any interim payments, which of course Defendant received) by 5/21/21 was $661.06.  Assuming that all of Plaintiff's $2,271.05 in payments were made on the latest possible day, 5/21/21, the date of Defendant's next garnishment application, the entirety of the $661.06 in accrued interest would have been paid in addition to $1,609.99 in principal repayments.  The maximum balance due was $7,485.73 plus $8.40 for service fees and $10 for the garnishment fee surcharge, for a grand total maximum possible balance of $7,504.13 as of 5/21/21.  Defendant's difficulty with math persisted through the garnishment application dated 5/21/21, where he credited only $2,050.47 in total payments despite the fact that Plaintiff had made at least $1,016.61 + $2,271.05 =  $3,287.66 in payments.  Once again, Defendant made an egregious error in calculating the total balance due on the 5/21/21 garnishment form, wrongly

19

reporting that Plaintiff still owed a total of $7,953.80, at least $449.27 more than Plaintiff could possibly have owed. The effect of these errors was that Plaintiff was paying hundreds of dollars in interest that she did not owe. Defendant's math errors continued, and were always in Defendant's favor. For example from 6/1/21 to 3/17/22, Defendant garnished $4,776.86 from Plaintiff. Thus, by 3/17/22, Plaintiff had paid Defendant a minimum total of $8,064.52. Plaintiff's HR records, which she is producing herewith, show that Plaintiff actually paid $8,147.66. If this is the true amount Plaintiff paid, Defendant's misstatements of the debt are even more egregious. If the maximum possible balance on 5/21/21 was $7,504.13, then the maximum interest that could have accrued by 4/19/22, the date of Defendant's next garnishment application, was $616.47 and the maximum debt balance could be $8,120.60 without any payments. Once again, assuming all payments were made on 4/19/2022, the $4,776.86 in payments would result in a maximum balance owed, after $10.85 in service fees and the $10 garnishment surcharge, of $3,364.59. On the 4/19/22 garnishment form, Defendant falsely and fraudulently inflated this balance by thousands of dollars, claiming that Plaintiff owed $6,372.48. On this same garnishment form, Defendant added $18.40 in "post judgment costs" that were false and illusory. Defendant never filed a bill of costs for any amount, and the circuit clerk never taxed any such costs in Defendant's favor. Undeterred by the rules, the law, or the rules of professional conduct, Defendant simply added this $18.40 to Plaintiff's balance due because he thought nobody was watching. Subsequently, Defendant garnished Plaintiff for another $1,667.84 according to case.net records. Because costs, then interest, and then principal are paid down (in that order), Plaintiff paid Defendant for the illicit $18.40 in "post judgment costs" in addition to post-judgment interest that Plaintiff did not owe. Plaintiff was forced to hire the undersigned

20

counsel to try and quash the garnishment in 19PR-AC00283.  Fortunately, counsel was able to stop the garnishment.  For counsel's work in the state court case, Plaintiff is indebted to counsel for 2.7 hours of time at $450 per hour, totaling $1,215.

18.    SECOND GARNISHMENT: PRIOR PAYMENTS

The second garnishment order indicates that the payments you made prior to June 1, 2021 totaled Two Thousand and Fifty Dollars and Forty-Seven cents ($2,050.47). If you contend this amount is inaccurate, describe the accurate amount of total payments you made prior to June 1, 2021.

**ANSWER:** On 9/12/19, Defendant obtained judgment in the amount of $9351.14 against Plaintiff.  The judgment bore 9% interest.  There were no taxed costs.  With no payment whatsoever from Plaintiff, the maximum interest accrual to 7/30/20 was $742.84.  Plaintiff did pay at least $1016.61 according to Defendant's own garnishment application dated 7/30/20.  On that form, Defendant's inability to perform basic math manifested for the first time, resulting in significant errors in Defendant's favor.  On 7/30/20, via the garnishment form, Defendant reported to the court and Plaintiff that interest in the amount of $750.11.  In reality, Plaintiff's payments would have significantly paid down the principal amount of the judgment from 9/12/19 to 7/30/20.  Even if the entire $1,016.61 had been paid on 7/30/20, the very day of the garnishment application, accrued interest in the amount of $742.84 would be paid in its entirety and the principal amount of the judgment would be reduced by $273.77 to $9,077.37.  When the $8.35 service fee and $10 garnishment clerk fee surcharge are added to this amount, the maximum balance that could be due was $9,095.72.  As the bulk of the $1,016.61 would have been received far earlier than 7/30/20, more principal would have been paid off and the true balance is likely far lower than the maximum possible balance of $9,095.72.  Defendant Huelskamp, a debt collector regulated by the strict liability FDCPA, errantly reported the balance due as $9,102.99.   This is an error of at least $7.27 in

21

Defendant's favor, and constitutes an amount that Plaintiff could not possibly have owed. Between 8/4/20 and 5/10/21, Plaintiff paid, according to case.net records, a total of $2,271.05 to Defendant. Because the maximum possible balance owed on 7/30/20 was $9,095.72, the maximum possible interest that could have accrued (even without any interim payments, which of course Defendant received) by 5/21/21 was $661.06. Assuming that all of Plaintiff's $2,271.05 in payments were made on the latest possible day, 5/21/21, the date of Defendant's next garnishment application, the entirety of the $661.06 in accrued interest would have been paid in addition to $1,609.99 in principal repayments. The maximum balance due was $7,485.73 plus $8.40 for service fees and $10 for the garnishment fee surcharge, for a grand total maximum possible balance of $7,504.13 as of 5/21/21. Defendant's difficulty with math persisted through the garnishment application dated 5/21/21, where he credited only $2,050.47 in total payments despite the fact that Plaintiff had made at least $1,016.61 + $2,271.05 = $3,287.66 in payments. Once again, Defendant made an egregious error in calculating the total balance due on the 5/21/21 garnishment form, wrongly reporting that Plaintiff still owed a total of $7,953.80, at least $449.27 more than Plaintiff could possibly have owed. The effect of these errors was that Plaintiff was paying hundreds of dollars in interest that she did not owe. Defendant's math errors continued, and were always in Defendant's favor. For example from 6/1/21 to 3/17/22, Defendant garnished $4,776.86 from Plaintiff. Thus, by 3/17/22, Plaintiff had paid Defendant a minimum total of $8,064.52. Plaintiff's HR records, which she is producing herewith, show that Plaintiff actually paid $8,147.66. If this is the true amount Plaintiff paid, Defendant's misstatements of the debt are even more egregious. If the maximum possible balance on 5/21/21 was $7,504.13, then the maximum interest that could have accrued by 4/19/22, the date of Defendant's next garnishment application, was $616.47 and the maximum debt balance could be $8,120.60 without any payments. Once again, assuming all payments were made on

4/19/2022, the $4,776.86 in payments would result in a maximum balance owed, after $10.85 in service fees and the $10 garnishment surcharge, of $3,364.59. On the 4/19/22 garnishment form, Defendant falsely and fraudulently inflated this balance by thousands of dollars, claiming that Plaintiff owed $6,372.48. On this same garnishment form, Defendant added $18.40 in "post judgment costs" that were false and illusory. Defendant never filed a bill of costs for any amount, and the circuit clerk never taxed any such costs in Defendant's favor. Undeterred by the rules, the law, or the rules of professional conduct, Defendant simply added this $18.40 to Plaintiff's balance due because he thought nobody was watching. Subsequently, Defendant garnished Plaintiff for another $1,667.84 according to case.net records. Because costs, then interest, and then principal are paid down (in that order), Plaintiff paid Defendant for the illicit $18.40 in "post judgment costs" in addition to post-judgment interest that Plaintiff did not owe. Plaintiff was forced to hire the undersigned counsel to try and quash the garnishment in 19PR-AC00283. Fortunately, counsel was able to stop the garnishment. For counsel's work in the state court case, Plaintiff is indebted to counsel for 2.7 hours of time at $450 per hour, totaling $1,215.

19.     SECOND GARNISHMENT: INTEREST

The second garnishment order indicates that you owed Six Hundred and Thiry-Four Dollars and Seventy-Three cents ($634.73) in post judgment interest as of June 1, 2021. If you contend this amount is inaccurate, describe the accurate amount you owed in post judgment interest as of June 1, 2021

**ANSWER:** On 9/12/19, Defendant obtained judgment in the amount of $9351.14 against Plaintiff. The judgment bore 9% interest. There were no taxed costs. With no payment whatsoever from Plaintiff, the maximum interest accrual to 7/30/20 was $742.84. Plaintiff did pay at least $1016.61 according to Defendant's own garnishment application dated 7/30/20. On that form, Defendant's inability to perform basic math manifested for the first

23

time, resulting in significant errors in Defendant's favor.  On 7/30/20, via the garnishment form, Defendant reported to the court and Plaintiff that interest in the amount of $750.11.  In reality, Plaintiff's payments would have significantly paid down the principal amount of the judgment from 9/12/19 to 7/30/20.  Even if the entire $1,016.61 had been paid on 7/30/20, the very day of the garnishment application, accrued interest in the amount of $742.84 would be paid in its entirety and the principal amount of the judgment would be reduced by $273.77 to $9,077.37.  When the $8.35 service fee and $10 garnishment clerk fee surcharge are added to this amount, the maximum balance that could be due was $9,095.72.  As the bulk of the $1,016.61 would have been received far earlier than 7/30/20, more principal would have been paid off and the true balance is likely far lower than the maximum possible balance of $9,095.72.  Defendant Huelskamp, a debt collector regulated by the strict liability FDCPA, errantly reported the balance due as $9,102.99.  This is an error of at least $7.27 in Defendant's favor, and constitutes an amount that Plaintiff could not possibly have owed.  Between 8/4/20 and 5/10/21, Plaintiff paid, according to case.net records, a total of $2,271.05 to Defendant.  Because the maximum possible balance owed on 7/30/20 was $9,095.72, the maximum possible interest that could have accrued (even without any interim payments, which of course Defendant received) by 5/21/21 was $661.06.  Assuming that all of Plaintiff's $2,271.05 in payments were made on the latest possible day, 5/21/21, the date of Defendant's next garnishment application, the entirety of the $661.06 in accrued interest would have been paid in addition to $1,609.99 in principal repayments.  The maximum balance due was $7,485.73 plus $8.40 for service fees and $10 for the garnishment fee surcharge, for a grand total maximum possible balance of $7,504.13 as of 5/21/21.  Defendant's difficulty with math persisted through the garnishment application dated 5/21/21, where he credited only $2,050.47 in total payments despite the fact that Plaintiff had made at least $1,016.61 + $2,271.05 =  $3,287.66 in payments.  Once again, Defendant made an

24

egregious error in calculating the total balance due on the 5/21/21 garnishment form, wrongly reporting that Plaintiff still owed a total of $7,953.80, at least $449.27 more than Plaintiff could possibly have owed. The effect of these errors was that Plaintiff was paying hundreds of dollars in interest that she did not owe. Defendant's math errors continued, and were always in Defendant's favor. For example from 6/1/21 to 3/17/22, Defendant garnished $4,776.86 from Plaintiff. Thus, by 3/17/22, Plaintiff had paid Defendant a minimum total of $8,064.52. Plaintiff's HR records, which she is producing herewith, show that Plaintiff actually paid $8,147.66. If this is the true amount Plaintiff paid, Defendant's misstatements of the debt are even more egregious. If the maximum possible balance on 5/21/21 was $7,504.13, then the maximum interest that could have accrued by 4/19/22, the date of Defendant's next garnishment application, was $616.47 and the maximum debt balance could be $8,120.60 without any payments. Once again, assuming all payments were made on 4/19/2022, the $4,776.86 in payments would result in a maximum balance owed, after $10.85 in service fees and the $10 garnishment surcharge, of $3,364.59. On the 4/19/22 garnishment form, Defendant falsely and fraudulently inflated this balance by thousands of dollars, claiming that Plaintiff owed $6,372.48. On this same garnishment form, Defendant added $18.40 in "post judgment costs" that were false and illusory. Defendant never filed a bill of costs for any amount, and the circuit clerk never taxed any such costs in Defendant's favor. Undeterred by the rules, the law, or the rules of professional conduct, Defendant simply added this $18.40 to Plaintiff's balance due because he thought nobody was watching. Subsequently, Defendant garnished Plaintiff for another $1,667.84 according to case.net records. Because costs, then interest, and then principal are paid down (in that order), Plaintiff paid Defendant for the illicit $18.40 in "post judgment costs" in addition to post-judgment interest that Plaintiff did not owe. Plaintiff was forced to hire the undersigned counsel to try and quash the garnishment in 19PR-AC00283. Fortunately, counsel was able to

25

#30308689 v1

stop the garnishment.  For counsel's work in the state court case, Plaintiff is indebted to counsel for 2.7 hours of time at $450 per hour, totaling $1,215.

20.      THIRD GARNISHMENT: BALANCE

The third garnishment order states that, as of April 22, 2022, you owed a total of Six Thousand Three Hundred and Seventy-Two Dollars and Forty-Eight cents ($6,372.48) to Perry County Healthy System. If you contend this amount is inaccurate, describe the accurate amount that you owed as of April 22, 2022.

**ANSWER:** On 9/12/19, Defendant obtained judgment in the amount of $9351.14 against Plaintiff.  The judgment bore 9% interest.  There were no taxed costs.  With no payment whatsoever from Plaintiff, the maximum interest accrual to 7/30/20 was $742.84.  Plaintiff did pay at least $1016.61 according to Defendant's own garnishment application dated 7/30/20.  On that form, Defendant's inability to perform basic math manifested for the first time, resulting in significant errors in Defendant's favor.  On 7/30/20, via the garnishment form, Defendant reported to the court and Plaintiff that interest in the amount of $750.11.  In reality, Plaintiff's payments would have significantly paid down the principal amount of the judgment from 9/12/19 to 7/30/20.  Even if the entire $1,016.61 had been paid on 7/30/20, the very day of the garnishment application, accrued interest in the amount of $742.84 would be paid in its entirety and the principal amount of the judgment would be reduced by $273.77 to $9,077.37.  When the $8.35 service fee and $10 garnishment clerk fee surcharge are added to this amount, the maximum balance that could be due was $9,095.72.  As the bulk of the $1,016.61 would have been received far earlier than 7/30/20, more principal would have been paid off and the true balance is likely far lower than the maximum possible balance of $9,095.72.  Defendant Huelskamp, a debt collector regulated by the strict liability FDCPA, errantly reported the balance due as $9,102.99.  This is an error of at least $7.27 in Defendant's favor, and constitutes an

26

amount that Plaintiff could not possibly have owed.  Between 8/4/20 and 5/10/21, Plaintiff paid, according to case.net records, a total of $2,271.05 to Defendant.  Because the maximum possible balance owed on 7/30/20 was $9,095.72, the maximum possible interest that could have accrued (even without any interim payments, which of course Defendant received) by 5/21/21 was $661.06.  Assuming that all of Plaintiff's $2,271.05 in payments were made on the latest possible day, 5/21/21, the date of Defendant's next garnishment application, the entirety of the $661.06 in accrued interest would have been paid in addition to $1,609.99 in principal repayments.  The maximum balance due was $7,485.73 plus $8.40 for service fees and $10 for the garnishment fee surcharge, for a grand total maximum possible balance of $7,504.13 as of 5/21/21.  Defendant's difficulty with math persisted through the garnishment application dated 5/21/21, where he credited only $2,050.47 in total payments despite the fact that Plaintiff had made at least $1,016.61 + $2,271.05 =  $3,287.66 in payments.  Once again, Defendant made an egregious error in calculating the total balance due on the 5/21/21 garnishment form, wrongly reporting that Plaintiff still owed a total of $7,953.80, at least $449.27 more than Plaintiff could possibly have owed.  The effect of these errors was that Plaintiff was paying hundreds of dollars in interest that she did not owe.  Defendant's math errors continued, and were always in Defendant's favor.  For example from 6/1/21 to 3/17/22, Defendant garnished $4,776.86 from Plaintiff.  Thus, by 3/17/22, Plaintiff had paid Defendant a minimum total of $8,064.52. Plaintiff's HR records, which she is producing herewith, show that Plaintiff actually paid $8,147.66.  If this is the true amount Plaintiff paid, Defendant's misstatements of the debt are even more egregious.  If the maximum possible balance on 5/21/21 was $7,504.13, then the maximum interest that could have accrued by 4/19/22, the date of Defendant's next garnishment application, was $616.47 and the maximum debt balance could be $8,120.60 without any

payments.    Once again, assuming all payments were made on 4/19/2022, the $4,776.86 in payments would result in a maximum balance owed, after $10.85 in service fees and the $10 garnishment surcharge, of $3,364.59.  On the 4/19/22 garnishment form, Defendant falsely and fraudulently inflated this balance by thousands of dollars, claiming that Plaintiff owed $6,372.48.  On this same garnishment form, Defendant added $18.40 in "post judgment costs" that were false and illusory.  Defendant never filed a bill of costs for any amount, and the circuit clerk never taxed any such costs in Defendant's favor.  Undeterred by the rules, the law, or the rules of professional conduct, Defendant simply added this $18.40 to Plaintiff's balance due because he thought nobody was watching.   Subsequently, Defendant garnished Plaintiff for another $1,667.84 according to case.net records.  Because costs, then interest, and then principal are paid down (in that order), Plaintiff paid Defendant for the illicit $18.40 in "post judgment costs" in addition to post-judgment interest that Plaintiff did not owe.  Plaintiff was forced to hire the undersigned counsel to try and quash the garnishment in 19PR-AC00283.  Fortunately, counsel was able to stop the garnishment.  For counsel's work in the state court case, Plaintiff is indebted to counsel for 2.7 hours of time at $450 per hour, totaling $1,215.

21.    THIRD GARNISHMENT: PRIOR PAYMENTS

The third garnishment order indicates that the payments you made prior to April 22, 2022 totaled Four Thousand Seven Hundred and Seventy-Six Dollars and Eighty-Six cents ($4,776.86). If you contend this amount is inaccurate, describe the accurate amount of total payments you made prior to April 22, 2022.

**ANSWER:** Plaintiff is without knowledge; Defendant is in possession of these records.

22.    THIRD GARNISHMENT: INTEREST

The third garnishment order indicates that you owed One Thousand Seven Hundred and Fifty-Eight Dollars and Ninety-Five cents ($1,758.95) in post judgment interest as of April 22, 2022. If you contend this amount is inaccurate, describe the accurate amount you owed in post judgment interest as of April 22, 2022.

**ANSWER:** On 9/12/19, Defendant obtained judgment in the amount of $9351.14 against Plaintiff. The judgment bore 9% interest. There were no taxed costs. With no payment whatsoever from Plaintiff, the maximum interest accrual to 7/30/20 was $742.84. Plaintiff did pay at least $1016.61 according to Defendant's own garnishment application dated 7/30/20. On that form, Defendant's inability to perform basic math manifested for the first time, resulting in significant errors in Defendant's favor. On 7/30/20, via the garnishment form, Defendant reported to the court and Plaintiff that interest in the amount of $750.11. In reality, Plaintiff's payments would have significantly paid down the principal amount of the judgment from 9/12/19 to 7/30/20. Even if the entire $1,016.61 had been paid on 7/30/20, the very day of the garnishment application, accrued interest in the amount of $742.84 would be paid in its entirety and the principal amount of the judgment would be reduced by $273.77 to $9,077.37. When the $8.35 service fee and $10 garnishment clerk fee surcharge are added to this amount, the maximum balance that could be due was $9,095.72. As the bulk of the $1,016.61 would have been received far earlier than 7/30/20, more principal would have been paid off and the true balance is likely far lower than the maximum possible balance of $9,095.72. Defendant Huelskamp, a debt collector regulated by the strict liability FDCPA, errantly reported the balance due as $9,102.99. This is an error of at least $7.27 in Defendant's favor, and constitutes an amount that Plaintiff could not possibly have owed. Between 8/4/20 and 5/10/21, Plaintiff paid, according to case.net records, a total of $2,271.05 to Defendant. Because the maximum possible balance owed on 7/30/20 was $9,095.72, the maximum possible interest that could have accrued (even without any interim payments,

29

which of course Defendant received) by 5/21/21 was $661.06.   Assuming that all of Plaintiff's $2,271.05 in payments were made on the latest possible day, 5/21/21, the date of Defendant's next garnishment application, the entirety of the $661.06 in accrued interest would have been paid in addition to $1,609.99 in principal repayments.   The maximum balance due was $7,485.73 plus $8.40 for service fees and $10 for the garnishment fee surcharge, for a grand total maximum possible balance of $7,504.13 as of 5/21/21. Defendant's difficulty with math persisted through the garnishment application dated 5/21/21, where he credited only $2,050.47 in total payments despite the fact that Plaintiff had made at least $1,016.61 + $2,271.05 =  $3,287.66 in payments.   Once again, Defendant made an egregious error in calculating the total balance due on the 5/21/21 garnishment form, wrongly reporting that Plaintiff still owed a total of $7,953.80, at least $449.27 more than Plaintiff could possibly have owed.   The effect of these errors was that Plaintiff was paying hundreds of dollars in interest that she did not owe.   Defendant's math errors continued, and were always in Defendant's favor.   For example from 6/1/21 to 3/17/22, Defendant garnished $4,776.86 from Plaintiff.   Thus, by 3/17/22, Plaintiff had paid Defendant a minimum total of $8,064.52.   Plaintiff's HR records, which she is producing herewith, show that Plaintiff actually paid $8,147.66.   If this is the true amount Plaintiff paid, Defendant's misstatements of the debt are even more egregious.   If the maximum possible balance on 5/21/21 was $7,504.13, then the maximum interest that could have accrued by 4/19/22, the date of Defendant's next garnishment application, was $616.47 and the maximum debt balance could be $8,120.60 without any payments.   Once again, assuming all payments were made on 4/19/2022, the $4,776.86 in payments would result in a maximum balance owed, after $10.85 in service fees and the $10 garnishment surcharge, of $3,364.59.   On the 4/19/22 garnishment form, Defendant falsely and fraudulently inflated this balance by thousands of dollars, claiming that Plaintiff owed $6,372.48.   On this same garnishment form, Defendant added

30

#30308689 v1

$18.40 in "post judgment costs" that were false and illusory.  Defendant never filed a bill of costs for any amount, and the circuit clerk never taxed any such costs in Defendant's favor.  Undeterred by the rules, the law, or the rules of professional conduct, Defendant simply added this $18.40 to Plaintiff's balance due because he thought nobody was watching.  Subsequently, Defendant garnished Plaintiff for another $1,667.84 according to case.net records.  Because costs, then interest, and then principal are paid down (in that order), Plaintiff paid Defendant for the illicit $18.40 in "post judgment costs" in addition to post-judgment interest that Plaintiff did not owe.  Plaintiff was forced to hire the undersigned counsel to try and quash the garnishment in 19PR-AC00283.  Fortunately, counsel was able to stop the garnishment.  For counsel's work in the state court case, Plaintiff is indebted to counsel for 2.7 hours of time at $450 per hour, totaling $1,215.

23.    SATISFACTION OF DEBT

If you contend you satisfied the full debt owed by yourself to Perry County Health System, please provide:

   a.  Each and every payment made by or on behalf of yourself to satisfy such debt;

   b.  The date of each of the above payments;

   c.  The amount of each of the above payments;

   d.  The grand total of all the above payments.

**ANSWER:** Plaintiff never owed a debt to Perry County Health System.

24.    PUNITIVE DAMAGES

Regarding your contention that Defendant's garnishment related actions were "knowing, willful, and intentional justifying the imposition of punitive damages," please provide any and all information/facts:

31

#30308689 v1

a.  supporting your claim that Defendants alleged wrongful garnishment was done
    intentionally;

b.  supporting your claim that Defendant was aware Plaintiff did not owe the amount
    being sought in the garnishments;

c.  supporting your claim that Defendant intended to cause injury to Plaintiff by
    garnishing her;

d.  supporting your claim that Defendant's purpose in filing the garnishment
    applications was to harass and oppress her;

**ANSWER:** On 9/12/19, Defendant obtained judgment in the amount of $9351.14 against Plaintiff.  The judgment bore 9% interest.  There were no taxed costs.  With no payment whatsoever from Plaintiff, the maximum interest accrual to 7/30/20 was $742.84.  Plaintiff did pay at least $1016.61 according to Defendant's own garnishment application dated 7/30/20.  On that form, Defendant's inability to perform basic math manifested for the first time, resulting in significant errors in Defendant's favor.  On 7/30/20, via the garnishment form, Defendant reported to the court and Plaintiff that interest in the amount of $750.11.  In reality, Plaintiff's payments would have significantly paid down the principal amount of the judgment from 9/12/19 to 7/30/20.  Even if the entire $1,016.61 had been paid on 7/30/20, the very day of the garnishment application, accrued interest in the amount of $742.84 would be paid in its entirety and the principal amount of the judgment would be reduced by $273.77 to $9,077.37.  When the $8.35 service fee and $10 garnishment clerk fee surcharge are added to this amount, the maximum balance that could be due was $9,095.72.  As the bulk of the $1,016.61 would have been received far earlier than 7/30/20, more principal would have been paid off and the true balance is likely far lower than the maximum possible balance of $9,095.72.  Defendant Huelskamp, a debt collector regulated by the strict liability FDCPA, errantly reported the balance due as $9,102.99.  This is an error of at least $7.27 in

32

#30308689 v1

Defendant's favor, and constitutes an amount that Plaintiff could not possibly have owed. Between 8/4/20 and 5/10/21, Plaintiff paid, according to case.net records, a total of $2,271.05 to Defendant. Because the maximum possible balance owed on 7/30/20 was $9,095.72, the maximum possible interest that could have accrued (even without any interim payments, which of course Defendant received) by 5/21/21 was $661.06. Assuming that all of Plaintiff's $2,271.05 in payments were made on the latest possible day, 5/21/21, the date of Defendant's next garnishment application, the entirety of the $661.06 in accrued interest would have been paid in addition to $1,609.99 in principal repayments. The maximum balance due was $7,485.73 plus $8.40 for service fees and $10 for the garnishment fee surcharge, for a grand total maximum possible balance of $7,504.13 as of 5/21/21. Defendant's difficulty with math persisted through the garnishment application dated 5/21/21, where he credited only $2,050.47 in total payments despite the fact that Plaintiff had made at least $1,016.61 + $2,271.05 = $3,287.66 in payments. Once again, Defendant made an egregious error in calculating the total balance due on the 5/21/21 garnishment form, wrongly reporting that Plaintiff still owed a total of $7,953.80, at least $449.27 more than Plaintiff could possibly have owed. The effect of these errors was that Plaintiff was paying hundreds of dollars in interest that she did not owe. Defendant's math errors continued, and were always in Defendant's favor. For example from 6/1/21 to 3/17/22, Defendant garnished $4,776.86 from Plaintiff. Thus, by 3/17/22, Plaintiff had paid Defendant a minimum total of $8,064.52. Plaintiff's HR records, which she is producing herewith, show that Plaintiff actually paid $8,147.66. If this is the true amount Plaintiff paid, Defendant's misstatements of the debt are even more egregious. If the maximum possible balance on 5/21/21 was $7,504.13, then the maximum interest that could have accrued by 4/19/22, the date of Defendant's next garnishment application, was $616.47 and the maximum debt balance could be $8,120.60 without any payments. Once again, assuming all payments were made on

33

4/19/2022, the $4,776.86 in payments would result in a maximum balance owed, after $10.85 in service fees and the $10 garnishment surcharge, of $3,364.59.  On the 4/19/22 garnishment form, Defendant falsely and fraudulently inflated this balance by thousands of dollars, claiming that Plaintiff owed $6,372.48.  On this same garnishment form, Defendant added $18.40 in "post judgment costs" that were false and illusory.  Defendant never filed a bill of costs for any amount, and the circuit clerk never taxed any such costs in Defendant's favor. Undeterred by the rules, the law, or the rules of professional conduct, Defendant simply added this $18.40 to Plaintiff's balance due because he thought nobody was watching. Subsequently, Defendant garnished Plaintiff for another $1,667.84 according to case.net records.  Because costs, then interest, and then principal are paid down (in that order), Plaintiff paid Defendant for the illicit $18.40 in "post judgment costs" in addition to post-judgment interest that Plaintiff did not owe.  Plaintiff was forced to hire the undersigned counsel to try and quash the garnishment in 19PR-AC00283.  Fortunately, counsel was able to stop the garnishment.  For counsel's work in the state court case, Plaintiff is indebted to counsel for 2.7 hours of time at $450 per hour, totaling $1,215.

25.    <u>EXCESS GARNISHMENT</u>

Regarding your contention that Defendant garnished an amount in excess of the actual principal amount of the balance owed by you to Perry County Health System, please provide:

     a.   The date and amount of the payment that satisfied such debt;

     b.   The date and amount of any payments made after satisfaction of such debt;

     c.   The total amount of payments made in excess of what was legally owed to Perry County Healthy System.

**ANSWER:** Plaintiff owed no debt to Perry County Health System.

34

Respectfully submitted,

**VOYTAS LAW, LLC**

By:  /s/ Richard A. Voytas, Jr.
    Richard A. Voytas, Jr., #52046
    David A. Weber, #70409
    Caleb G. Christian, #70830
    7321 S. Lindbergh Blvd., Ste. 400
    St. Louis, MO  63125
    Phone: 314.380.3166
    Email:  rick@voytaslaw.com
          david@voytaslaw.com
          caleb@voytaslaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was, this 12th day of April, 2023, sent electronically via email to all counsel of record for Defendant:

Bradley R. Hansmann
600 Kellwood Pkwy, Suite 120
St. Louis, MO 63017
bhansmann@wwbhlaw.com

        /s/ Richard A. Voytas, Jr.

35

#30308689 v1

## ATTESTATION

I, CONNIE ESSMYER, pursuant to penalty under 28 U.S.C. § 1746, do hereby state that I have read the foregoing PLAINTIFF'S RESPONSES DEFENDANT HUELSKAMP LAW, LLC'S FIRST SET OF INTERROGATORIES, and that the answers contained therein are true and accurate to the best of my knowledge, information, and belief.

DocuSigned by:

92BB4FE960E143B...

CONNIE ESSMYER

Executed on    4/11/2023    .

date

37

#30308689 v1