

EXHIBIT

1



# PohlmanUSA®

## Court Reporting and Litigation Services

---

Connie Essmyer

October 18, 2023

---

Connie Essmyer

vs.

Huelskamp Law, LLC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

Connie Essmyer,            )
                           )
    Plaintiff,             )
v.                         ) Case No. 1:22-cv-00140
                           )
Huelskamp Law, LLC,        )
                           )
    Defendant.             )

DEPOSITION OF CONNIE ESSMYER
Taken on behalf of the Defendant
October 18, 2023

Julie Ann Whiting, CCR 830, RPR

INDEX

Examination by Mr. Hunkins                Page 5

Examination by Mr. Christian              Page 45

Further Examination by Mr. Hunkins        Page 50

Further Examination by Mr. Christian      Page 56


EXHIBIT INDEX

Defendant's Exhibit A                      Page 13
     (Entry of Judgment on Confession of Party)

Defendant's Exhibit B                      Page 14
     (Complaint)

Defendant's Exhibit C                      Page 17
     (Handwritten note dated 2/28/20)

Defendant's Exhibit D                      Page 20
     (Photocopies of cash, receipts, and checks)

Defendant's Exhibit E                      Page 22
     (ADP Workforce Now - Pay Profile)

Defendant's Exhibit F                      Page 24
     (Plaintiff's Responses Defendant Huelskamp Law,
     LLC's First Set of Interrogatories)


     (Whereupon, the exhibits are attached
electronically to the original and copies.)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

Connie Essmyer,          )
                         )
    Plaintiff,           )
v.                       ) Case No. 1:22-cv-00140
                         )
Huelskamp Law, LLC,      )
                         )
    Defendant.           )

DEPOSITION OF CONNIE ESSMYER, produced, sworn, and examined on the 18th day of October, 2023, at the offices of Voytas Law, 7321 South Lindbergh Boulevard, Suite 400B, St. Louis, Missouri, between the hours of 9:59 a.m. to 11:23 a.m., before Julie Ann Whiting, a Certified Court Reporter within and for the State of Missouri and Registered Professional Reporter, in a cause now pending In the United States District Court, Eastern District of Missouri, wherein CONNIE ESSMYER is the PLAINTIFF and HUELSKAMP LAW, LLC is the DEFENDANT.

A P P E A R A N C E S

APPEARING ON BEHALF OF THE PLAINTIFF:

Voytas Law, LLC
Caleb Christian, Esq.
Jacob Mohrmann, Esq.
7321 South Lindbergh Boulevard, Suite 400B
St. Louis, Missouri  63125
(314)380-3166
caleb@voytaslaw.com
jacob@voytaslaw.com


APPEARING ON BEHALF OF THE DEFENDANT:

Watters Wolf Bub & Hansmann, LLC
Daniel P. Hunkins, Esq.
600 Kellwood Parkway, Suite 120
St. Louis, Missouri  63017
(636)798-0570
dhunkins@wwbhlaw.com


ALSO PRESENT:

        Robert Huelskamp




COURT REPORTER:

Julie Ann Whiting, CCR 830(MO), RPR
PohlmanUSA
10 South Broadway, Suite 1400
St. Louis, Missouri  63102
(314)421-0099

IT IS HEREBY STIPULATED AND AGREED, by and between counsel for the Plaintiff and Counsel for the Defendant, that the Deposition of CONNIE ESSMYER may be taken in shorthand by Julie Ann Whiting, a Certified Court Reporter, and afterwards transcribed into typewriting, and the signature of the witness is expressly not waived.

* * * * *

(Deposition start time:  9:59 a.m.)

CONNIE ESSMYER,

of lawful age, being produced, sworn, and examined on behalf of the Defendant, deposes and says:

EXAMINATION

QUESTIONS BY MR. HUNKINS:

Q    Can you please state your name for the record?

**A    Connie Sue Essmyer.**

Q    You understand you were just placed under oath?

**A    Yes.**

Q    And while we're not in a courtroom, you understand that you -- to give all your answers honestly and truthfully as if you were in front of a judge in a courtroom?

**A    Yes.**

Q    Have you ever had your deposition taken ever before?

A    No.

Q    Okay.  I'm sure your lawyer has prepared you and went over these ground rules, but I'm just going to go over them with you.  Okay?

All of your responses need to be verbal so that the court reporter can take everything down.  Okay?

A    Yep.

Q    You're doing a good job so far.  I'd ask that you wait until I'm done asking my question before you respond.  Okay?

A    Yes.

Q    There will be times where you anticipate what I'm asking you and you know what I'm going to ask and you'll want to answer it, but just wait until I'm done asking so she can take down everything accurately.  Okay?

A    Okay.

Q    And if at any point you feel like I'm stepping on your toes or I'm interrupting your answer, please let me know so I can -- I don't intend to do that.  Okay?

A    Okay.

Q   I don't expect this to be terribly long. But if at any point you need to take a break, use the restroom, just let me know.  Okay?

A   **Okay.**

Q   And, likewise, I will probably ask terrible questions.  If you don't understand my questions, please let me know so that I can rephrase it.  Okay?

A   **Okay.**

Q   In preparation of this deposition, did you review any documents?

A   **No.**

Q   No?  You didn't review your discovery responses?

A   **No.**

Q   You didn't review your Petition?

A   **No.**

Q   Okay.  I assume you -- I don't want to hear about it, but I'm assuming you spoke with your lawyers?

A   **Yes.**

Q   Okay.  Anything else besides that?

A   **No.**

Q   All right.  What's your date of birth?

A

Q    Are you currently married?

A    **Yes.**

Q    Who are you married to?

A    **Joseph Essmyer.**

Q    Sorry.  What was --

A    **Joseph.**

Q    Joseph.  And I notice Joseph was part of the original -- the debt at issue in this case. Correct?

A    **I believe so.**

Q    Okay.  But he's not -- he hasn't filed suit.  Right?

A    **No.**

Q    You're still married to Joseph?

A    **Yes.**

Q    Okay.  How long have you guys been married?

A    **26 years.**

Q    Congratulations.

Where do you guys live?

A    **Ste. Gen, Missouri.**

Q    What's your address?

A

Q    Anyone besides you and Joseph live there?

A    **No.**

Q   Are you employed?

A   **Yes.**

Q   Where at?

A   **Piva North America.**

Q   And you've been employed by Piva for a while.  Right?

A   **Eight years.**

Q   Eight years.

What is Piva?

A   **They make windows and doors.**

Q   Residential or --

A   **Yes.**

Q   -- for everything?

A   **Everything.**

Q   Okay.  What do you do there?

A   **I make frames, vinyl frames.**

Q   So you're like a -- may not be the right terminology -- but you're, like, on the line making things?

A   **Yes.**

Q   Okay.  Has that been your job consistently --

A   **No.**

Q   -- for those eight years?

A   **No.**

Q    What various positions have you held there?

**A    Lead worker.**

Q    What does that mean?

**A    That means I'm the boss over a line.**

Q    Is that what you are currently?

**A    That's what I used to be.**

Q    Okay.  Where -- what's your current position?  How about we start with that.

**A    Just a line worker.**

Q    So then -- I'm not trying to be rude, but it sounds like that's a step back from the lead worker?

**A    Yes.**

Q    Okay.  And when did that happen?

**A    Two years --**

Q    Two years ago?

**A    -- ago.  Uh-huh.**

Q    So 2021?

**A    Yes.**

Q    How long -- in 2021, when you were the lead worker, how long were you in that position?

**A    Five years.**

Q    So that's going back to 2016?

**A    Yes.**

Q    You paid hourly or salary?

A    **Hourly.**

Q    What's your hourly rate?

A    **17.75.**

Q    How long has it been that?

A    **Two years.**

Q    So that's while you have been a line worker?

A    **Yes.**

Q    And when you were the lead worker, what was your hourly rate?

A    **Fifteen.**

Q    It was less than when you were a line worker?

A    **Yes.**

Q    Okay.  Just out of curiosity, why would anyone want to be a lead worker, then?

A    **There's --**

Q    Other --

A    **-- back-story there.  Yeah, I'm not going to go into any of that.**

Q    Right.

A    **Yeah.**

Q    That's fair.  I was -- that's just me being nosy.

A   Curious.

Q   Yeah.

And so we're here to talk about the bill that was originally incurred at Perry County Memorial Hospital.

You understand that?

A   Yes.

Q   Okay.  And do you agree that the debt that you owed to Perry County Memorial Hospital was in the amount of $9,128.79?

A   I don't know about that.  I'm not sure.

Q   Okay.  I -- I don't know if I said this in the initial.  If any point I ask you a question that you don't know the answer to it, just --

A   I don't know.

Q   -- tell me you don't know and --

A   Okay.

Q   -- I'll try to help you out as best I can.

(Defendant's Exhibit A was marked for identification.)

MR. HUNKINS:  Sorry.  I've only got one copy.

MR. CHRISTIAN:  That's fine.

Q   (By Mr. Hunkins) Ma'am, I've just marked as Exhibit A, it's a three-page document which is

the consent judgment and entry of the judgment that was filed on September 12th, 2019.

Do you see that?

A    Yes.

Q    Okay.  And if you -- if you look over on -- on to the second page, it states in that first paragraph, quote, Joseph S. -- Joseph F. Essmyer and Connie Essmyer agrees that he owes Perry County Memorial Hospital in the amount of $9,128.79.

Did I read that correctly?

A    Yes.

Q    Okay.  So it -- you would agree that that is the debt that you owe Perry County Memorial Hospital.  Right?

A    Yes.

Q    Okay.  And that -- my understanding is that that arose from services provided dating back to 2014.  Is that -- is that correct?

A    I don't know.

(Defendant's Exhibit B was marked for identification.)

MR. HUNKINS:  I'll pass it over.  Sorry.

MR. CHRISTIAN:  Okay.

MR. HUNKINS:  I do have an extra copy of this.  Do you need it?

MR. CHRISTIAN: Oh, yeah.

MR. HUNKINS: I didn't realize I printed that one.

Q   (By Mr. Hunkins) Ma'am, I'm handing you what has been marked as Exhibit B, which is the Complaint that you filed in this case.

Do you see that?

A   Yes.

Q   Okay. Have you ever seen this document before?

A   No.

Q   Okay. If you flip over to paragraph 9, it states, The alleged debt arose from medical services that Plaintiff received from Defendant, Memorial Hospital, in 2014.

Do you see that?

A   Yes.

Q   Okay. So do you believe -- or do you agree with your Complaint that -- that the debt at issue here arose from services provided in 2014?

A   Yes.

Q   Okay. And if you flip over to the front page, at the top there it says that the Complaint was filed on October 19 of 2022. Correct?

A   Yes.

Q    Going back to Exhibit A, it -- skipping down you would agree that the consent judgment states that you would make monthly payments of $250 a month.  Right?

A    Yes.

Q    And it states that you and -- strike that.

And you would make those payments until the balance was paid in full.  Correct?

A    Yes.

Q    Okay.  And at that time it states that you and Joseph were both employed by Piva.  Correct?

A    Yes.

MR. HUNKINS:  And just for the record, Piva is P-I-V-A.

A    Yes.

Q    (By Mr. Hunkins) And so you understood by signing -- strike that.

If you flip over to the last page, you could see your -- you and Joseph both signed this consent judgment.  Correct?

A    Yes.

Q    Okay.  And so you agreed that if you failed to make payments for the debt owed to Perry County Memorial Hospital, that they retained the right to take any action authorized by law.

Correct?

A    Yes.

Q    Okay.  And you understood that when signing this consent judgment.  Correct?

A    Yes.

Q    Okay.  And so do you -- following -- after this consent judgment was entered on September 12th of 2019, do you know how many payments you made?

A    No.

Q    And I -- I just want to be -- be more specific.

So as I'm sure you're aware, at some point in time they began garnishing your wages.

You understand that?

A    Yes.

Q    Okay.  Before garnishing your wages, do you -- do you have any idea how many payments you personally made?

A    No.

Q    Okay.  So as you sit here today, you have no documentation showing how many payments you made?

A    No.

Q    Okay.  Do you recall making two payments of $250 each, in cash?

A    No.

Q    Okay.  Do you recall making a money order of $150?

A    No.

Q    No?

So before any garnishment was issued you're not aware of any document showing that you paid more than $650.  Correct?

A    **No.  I mean, I'm -- I'm sure I did, but it's been a few years ago.**

Q    You're sure you did what?

A    **Made some personal payments without a garnishment.**

Q    Before the garnishment?

A    **Before.**

Q    Okay.  Outside of the three that I've told you about, are you aware of any -- can you -- can you show anything to me establishing that you've made additional payments?

A    **No, I can't.**

Q    Okay.  And then over the course of -- strike that.

(Defendant's Exhibit C was marked for identification.)

Q    (By Mr. Hunkins) I'm going to hand you what I've marked as Exhibit C.  Take a chance and --

and read over that.

**A**   **(Reviewing.)**

Q   Did you review it?

**A**   **Yes.**

Q   Okay.  Is that your handwriting?

**A**   **Yes.**

Q   All right.  So you wrote this?

**A**   **Yes.**

Q   And at the top there it says on February 8 --

**A**   **Yes.**

Q   -- of 2020.  Correct?

**A**   **Yes.**

Q   All right.  And so it looks like at this point in time -- and correct me if I'm wrong -- but you were laid off from your job, and so you were requesting to only make a payment of $150 to the hospital.  Correct?

**A**   **Yes.**

Q   Okay.  And then -- I know you don't recall it, but then you made one $150 payment by money order.  Correct?

**A**   **I guess.**

Q   Okay.  That was a bad question.  So I told you I would ask them.

Do you have any memory of making any money order in the amount of $150?

A    I really don't recall.

Q    Okay.

A    No, I don't.

Q    As you sit here today, do you know how much money you paid to satisfy this debt?

A    No.

Q    Okay.  So you can't tell -- you can't tell me that you've paid more than what the debt is.  Correct?

A    I don't know.

Q    You don't know.  Okay.

Were you aware -- strike that.

When did you become aware of the fact that your wages were being garnished?

A    I don't know that either.

Q    How did you become aware of it?

A    I got a paycheck that showed it.

Q    Okay.  So the paycheck from Piva, right?

A    Yes.

Q    The paycheck from Piva showed that X amount of dollars were being garnished from your wages?

A    Yes.

Q    Okay.  And is that a physical paycheck?
Was it electronic or direct deposit?

**A    It was not physical, it was electronic.**

Q    Did you -- at any point in time, have you
ever looked at the garnishment application and
order?

**A    No.**

Q    Never looked at any of them?

**A    No.**

**(Defendant's Exhibit D was marked for
identification.)**

Q    (By Mr. Hunkins) Ma'am, I'm going to hand
you what is marked as Exhibit D.  It is a collection
of documents -- I guess a better word may be
receipts of proof of payments made by you in this
case.

MR. HUNKINS:  And the only one that is not
Bates stamped is that one that we produced last
night.  Do you see that?

MR. CHRISTIAN:  Yes.

Q    (By Mr. Hunkins) Okay.  Ma'am, I will
represent to you -- and you can go through and do
the math if you would like -- or we can do it if
you'd like -- but the total of every document in
here comes to $9,365.75.

A    Okay.

Q    Do you have any reason to dispute that?

A    No.

Q    Okay.  And you can't show me any document showing that you've paid more than that amount.  Correct?

A    I don't know.

Q    That is correct?

A    Say that again.

Q    You cannot show me any document showing that you've paid more than $9,365.75.  Correct?

A    Not with me.

Q    Okay.  Well, so do you have a document that shows proof of payments?

A    Yeah.

Q    And what would this be?

MR. CHRISTIAN:  I will represent that we have crunched numbers as well, and so I'm going to object being as that's work product.  That's the only document, to my knowledge, that Ms. Essmyer has looked at.  I believe that is --

THE WITNESS:  It is.

MR. CHRISTIAN:  -- what she's referring to.

THE WITNESS:  Yes.

Q    (By Mr. Hunkins) Okay.  And what is the number that you come up with?

A    **I don't know right off my head.**

Q    And what documents did you rely on -- let me ask a better question.

A    **Okay.**

Q    What -- what documents outside of documents prepared by your attorney were you able to look at that came up with a different number?

Ma'am, I'm asking the question.  Your attorney will tell you not to answer if -- if it's a -- if it's --

A    **I know.**

Q    Okay.

A    **I did my own research.**

Q    And what documents --

A    **And I got them from the courthouse and I got them from my work, so I have documentation.**

Q    Okay.

(Defendant's Exhibit E was marked for identification.)

Q    (By Mr. Hunkins) This -- is this what you're referring to?  Exhibit E?  From your work?

A    **No.  Mine's a little different from this.**

Q    And what -- what -- how -- in what way is it different?

A    **I got more -- more than this, and it don't add up, so --**

Q    And what doesn't add up?

A    **This number here (indicating).**

Q    Where -- where -- where is this document?

A    **It's at my home.**

Q    Why haven't you produced it in this case?

A    **I didn't -- wasn't aware I had to.**

Q    Okay.  Well, why'd you produce this?

A    **That was in my own investigation.**

Q    Yeah.  You said you have another document in your own investigation that hasn't been produced to us.

A    **That's --**

Q    Here, let me ask a better question, ma'am.

A    **Okay.**

Q    What is the number you came up with?

A    **What the number was, $9,735 and some change.**

Q    Okay.  And you have documentation that says you paid $9,735 and some change?

A    **I have documentation of what I did pay and what was not being recorded that I did pay.**

Q    Ma'am, do you -- do you recall responding to interrogatories, written documents, that we -- that we provided to you asking certain questions?

A    No.

Q    Okay.

MR. HUNKINS:  I only have -- I've got two of these here.  I'll just mark this as Exhibit F.

(Defendant's Exhibit F was marked for identification.)

Q    (By Mr. Hunkins) You don't recall looking at this, ever?

A    No.

Q    Turn -- turn to the last page.

A    Yep.

Q    This states that, I have read the foregoing Plaintiff's responses to Defendant, Huelskamp, LLC's, First Set of Interrogatories, and the answers contained therein are true and accurate to the best of my knowledge, information, and belief.

And that's -- there's a DocuSign by you.  Correct?

A    Yes.

Q    Okay.  So have you ever read this?

**A      Yes, I have.**

Q      Okay.  And you recall responding to these questions?

**A      I'm assuming I did.**

Q      Okay.  Look at interrogatory number 11, it's on page 9.  You see that?  The answer, it asks you to provide accounting of all payments you've made with regard to the second garnishment.

And you said, Plaintiff is not in possession of these records, does not know the precise dates and amounts of payments.  Defendant is in possession of these records.  Plaintiff requested records from her HR department and is producing everything in her possession that shows the dates and amounts of payments.

Did I read that correctly?

**A      Yeah, you've read that correctly.**

Q      Okay.  And this document that I've marked as Exhibit -- was that E -- is the only document you've produced to us.

So is it possible you don't have another document?

**A      No, it's not possible.  And this is not what -- I didn't fully read this, so -- I have the documents.  This is from the lawyer, and this is the**

**first time I read this.**

Q    The first time you read these interrogatories is when you're sitting in the room today with me?

**A    Yes.**

Q    Okay.  So by signing that, you were lying?

**A    I'm a little confused here.  Can you give me a minute?**

THE WITNESS:  Can I have a minute with you?

MR. CHRISTIAN:  No.  I would say that Dan is probably not going to allow us to take a minute right now.

MR. HUNKINS:  No.

**A    Okay.  All right.  So this is from -- can you explain this paper to me?**

Q    (By Mr. Hunkins) Those are questions --

**A    Okay.**

Q    -- that my law firm propounded on you to answer.

**A    Okay.  From the garnishment?**

Q    As a result of the Complaint you filed.

**A    Okay.  Okay.  I remember now.  It came on my phone electronically.  Yes.**

Q    Okay.

A    Okay.

Q    You -- in that discovery we just read you said you're producing everything I got, I'm producing everything.  But now you're telling me today that you have these -- this other magical document that says you've produced -- or you've paid more money.

Where is this document?

A    It's at my home.

Q    Okay.  Why haven't you produced it?

**A    I was not aware I had to produce it.  I have a lawyer.**

Q    Well --

**A    We have --**

Q    -- you produced Exhibit E.

**A    I have -- I have it.  So, I mean, I don't know.  I was -- I guess I was dumb.**

Q    Okay.  As you sit here today, what is the last -- on that document that you have at your house, what is the last date of payment?

**A    I don't know.**

Q    What is -- you -- you rattled off a 9,700 and some change earlier.

**A    Yes.**

Q    Is that a precise number, or are you just

guessing?

    **A**    **I'm guessing.**

    Q    Okay.  As you sit here today you cannot tell me -- you -- you cannot produce anything, show anything, that disputes my claim that you've paid a total of $9,365.75.  Correct?

    **A**    **I don't know.**

    Q    That document at home could add up to this exact same amount.  Right?

    **A**    **I don't know.**

    Q    Do you -- would you like us to go through -- I'll -- here, I'll -- we'll do that. We'll go through and add up every single one of these entries.  Okay?

        MR. CHRISTIAN:  Dan, can we go off the record for a second?

        MR. HUNKINS:  Yeah.

        (Off the record at 10:29 a.m.)

        (On the record at 10:34 a.m.)

    Q    (By Mr. Hunkins) All right, ma'am.  So I'm going to go through Exhibit D -- see if I can mark this so I don't keep asking you.  And we're going to go through each of those.  And I'm going to calculate it on my computer.

        And you have the computer in front of you.

Case: 1:22-cv-00140-SNLJ   Doc. #: 41-1   Filed: 12/15/23   Page: 30 of 66 PageID #: 593

Right?

A    **Okay.**

Q    And you can see what numbers --

A    **Right.**

Q    -- I'm putting in.  Right?

A    **Yeah.**

Q    Okay.  So the first one is $250.  Correct?

A    **Yes.**

Q    That's a cash payment.  Correct?

A    **Yes.**

Q    Plus another $250 cash payment.  Correct?

A    **Yes.**

Q    Plus $150 money order.  Correct?

A    **Yes.**

Q    Plus a $234.55 garnishment check.

Do you see that?

A    **Yes.**

Q    The next one is in the amount of $202.97. Correct?

A    **Yes.**

Q    The next one is $242.68.  Correct?

A    **Yes.**

Q    The next one is $259.63.  Correct?

A    **Yes.**

Q    The next one is $196.90.  Correct?

A    Yes.

Q    The next one is $192.97.  Correct?

A    Yes.

Q    The next one is $169.74.  Correct?

A    Yes.

Q    The next one is $289.57.  Correct?

A    Yes.

Q    The next one is $261.46.  Correct?

A    Yes.

Q    The next one is $220.58.  Correct?

A    Yes.

Q    The next one is $262.21.  Correct?

A    Yes.

Q    The next one is $231.10.  Correct?

A    Oh, I got 200 -- oh, wait --

     (Reporter caution.)

A    Oh, yes.  Right.  Yes.

Q    (By Mr. Hunkins) We're on -- we're on
Bates stamp --

A    Yes.

Q    -- 107.

A    Yes.

Q    Okay.  The next one is $273.49.  Correct?

A    Yes.

Q    The next one is $242.83.  Correct?

A    Yes.

Q    The next one is $237.  Correct?

A    Yes.

Q    The next one is $249.56?

A    Yes.

Q    The next one is $249.74?

A    Yes.

Q    The next one is $250.85.  Correct?

A    Yes.

Q    The next one is also $250.85.  Correct?

A    Yes.

Q    The next one is $251.89.  Correct?

A    Yes.

Q    The next one is $231.45.  Correct?

A    Yes.

Q    The next one is $233.48.  Correct?

A    Yes.

Q    The next one is $246.64.  Correct?

A    Yes.

Q    The next one is $251.98.  Correct?

A    Yes.

MR. CHRISTIAN:  I believe the next one is on -- is on 121.

MR. HUNKINS:  Got it.  Thank you.

Q    (By Mr. Hunkins) So we are now on

Defendant 0121, and that is $253 and -- strike that. $253.37.  Correct?

A    Yes.

Q    The next one is $176.19.  Correct?

A    Yes.

Q    The next one is $214.96.  Correct?

A    Yes.

Q    The next one is $247.28.  Correct?

A    Yes.

Q    The next one is $182.71.  Correct?

A    Yes.

Q    The next one is $239.28.  Correct?

A    Yes.

Q    The next one is $248.96.  Correct?

MR. CHRISTIAN:  Objection, misrepresentation.

MR. HUNKINS:  I don't know -- wait a minute.

MR. CHRISTIAN:  On 127?

MR. HUNKINS:  What did I say?

MR. CHRISTIAN:  You said 248.96.

MR. HUNKINS:  Thank you.

Q    (By Mr. Hunkins) The next one is $245.96. Correct?

A    Yes.

Q   Thank you.

The next one is $191.33.  Correct?

A   **Yes.**

Q   The next one is $230.10.  Correct?

A   **Yes.**

Q   The next one is $205.39.  Correct?

A   **Yes.**

Q   The next one is $226.97.  Correct?

A   **Yes.**

Q   The next one is $79.50.  Correct?

A   **Yes.**

Q   The next one is $102.22.  Correct?

A   **Yes.**

Q   The next one is $97.45.  Correct?

A   **Yes.**

Q   The next one is $87.01.  Correct?

A   **Yes.**

Q   The next one is $101.37.  Correct?

A   **Yes.**

Q   The next one is $154 -- or strike that.

The next one is $100.54.  Correct?

A   **Yes.**

Q   And that comes to a total -- looking at
what we've marked as Exhibit D -- to $9,365.75.
Correct?

A    Yes.

Q    Okay.  And, ma'am, as you sit here today you can't tell me that you've paid more than $9,365.75.  Correct?

A    I don't know.

Q    You're not aware of any document showing that you've paid more than that.  Correct?

A    I don't know.

Q    The only documents that you have are the documents that we just went through.  Correct?

A    I -- what's in front of me.

Q    What's in front of you.  Correct?

A    I don't know.

Q    You would agree that the documents we just went over, the receipts we just went over, came to $9,365.75.  Correct?

A    Yes.

Q    Okay.  You watched me do the math.

A    Yes, I did.

Q    Okay.  Earlier you mentioned that you went to your company and to the courthouse.  Correct?

A    Yes.

Q    What courthouse did you go to?

A    Perryville.

Q    Do you recall when that was?

A     No, I don't.

Q     Can you give me a year?

A     I would say 2021.

Q     You filed this Complaint in October of 2022.

A     Yes.

Q     Do you recall how far before that you went to the courthouse?

A     I really don't.

Q     Okay.  And what did you do at the courthouse?

A     What?

Q     What did you do?

A     What do you mean what I did -- what did I do?

Q     Well, you went to the courthouse.  Right?

A     Yes.

Q     For what purpose?

A     To get information.

Q     What kind of information?

A     To my garnishment.

Q     And -- and what information did you receive?

A     Paperwork of -- showing what was paid so far.

Q    And -- and what was that document?  Do you know?

A    No.

Q    And -- well, what did it tell you?

A    **Just -- it was kind of vague, really.**

Q    Okay.  That's -- that's all you can say, is that it was vague?

A    **Yes.**

Q    You can't tell me anything else it told you?

A    **No.**

Q    Okay.  When -- that -- that note that you handwrote earlier --

A    **Yes.**

Q    -- in 2020 --

A    **Yes.**

Q    -- did you deliver that personally to my client's office?

A    **I'm not -- I'm sure I did.**

Q    Okay.  Had you been -- have you visited with my client or his office since that date?

A    **Yes.**

Q    How many times?

A    **Once.**

Q    Okay.  Was that a phone call?  E-mail?  In

person?

A    In person.

Q    Okay.  And do you recall when that was?

A    Not exact date, no.

Q    How about an approximate date?

A    I'm going to say 2021, probably in June or July.

Q    June or July in 2021?

A    Yeah.  But I'm not for sure.

Q    And what was the purpose of going there?

A    To go over this garnishment and the payments being made.

Q    And who did you speak with?  Do you know?

A    That man right there (indicating).

Q    I'm sorry.  I wasn't -- say it again. Who?

A    Mr. Huelskamp.

Q    Okay.  And you went into his office and talked to him?

A    Yes.

Q    And what was that conversation?  Can you tell me?

A    It was to go over the payment of the garnishment that I was being garnished for.

Q    And what -- can you tell me any specific

conversation you had?

A    No.

Q    You can't tell me anything that Rob told you?

A    No.

Q    How long was the conversation?

A    I don't -- I don't know.

Q    What'd you do when you left?

A    What did I do?

Q    Like, after leaving, did you do anything different?

A    No.

Q    No.

This -- you said June or July of '21?

A    I'm not for sure on the date.

Q    You didn't modify your actions in any way?

A    Don't know.

Q    You can't tell me that you did?

A    No.

Q    In your Petition you claim that you reached out to his office multiple times.

When was that?

A    I don't remember.

Q    This was different --

A    I don't know.

Q    -- than the time you went in and talked to him?

A    I don't know.

Q    Well, it's your allegation.

A    Uh-huh.

Q    So is there any basis in that allegation?

A    Yeah.  There is basis in that allegation.

Q    Okay.

A    I did call.

Q    Okay.

A    Several times.

Q    And what number did you call from?

A    My cell phone.

Q    Okay.  And was this before or after your meeting in June or July of '21?

A    After.

Q    Okay.  And do you recall how long after?

A    A couple weeks.

Q    A couple weeks after the -- the meeting in June --

A    Yes.

Q    -- or July of '21?

A    Yes.

Q    Okay.  And what was the purpose of the follow-up?

A    To see if things -- anything was going to be done about it.

Q    Anything going to be done about what?

A    The things not adding up.

Q    Okay.  What do you mean by things?

A    The garnishment not adding up.

Q    In what way?

A    Just in the calculations that my husband and I did, they were not adding up.  And I went to his office to have a sit-down talk with him, him and my husband and I, and got nothing.

Q    Okay.  So this -- that was for the meeting in June or July of '21.  Right?

A    Yeah.  I'm not sure of the date, but there was a meeting.

Q    You and your husband went and tried to talk to Rob.  Correct?

A    Yes.

Q    And you can't tell me as you sit here today any conversation, specific conversation, you had with Rob.  Correct?

A    Other than it not adding up and -- no, I really can't.

Q    Okay.  And you can't tell me what Rob told you.  Correct?

**A**    Well, I can, but --

Q    Oh, earlier you told me you couldn't.

**A**    Well, okay.  I won't.

Q    So you don't have any -- okay.

And then -- then you follow up a few times later --

**A**    Yes.

Q    -- on -- attempt to call his office, I guess?

**A**    Yes.

Q    Okay.  How many times?

**A**    Probably two or three.

Q    Okay.  And that was within a couple weeks after the meeting?

**A**    After the meeting, yes.

Q    What was the purpose of the follow-up?

**A**    To see if they were going to do any investigation on how much was this garnishment.

Q    And so this would have been in, what, August, September of '21?

**A**    I'm not sure on the date.

Q    Okay.

**A**    It just happened.

Q    What is it that you believe my client did wrong?

A    I don't know.

MR. HUNKINS:  Could we take a break?

MR. CHRISTIAN:  Absolutely.

(Off the record at 10:56 a.m.)

(On the record at 11:07 a.m.)

Q    (By Mr. Hunkins) Ma'am, I don't have too terribly long, but -- just going to have a few questions.

If you look back at Exhibit A, which is the Entry of Judgment and the Consent Judgment you signed.

A    Yes.

Q    If you flip over to the last page -- I think I asked you this -- but that's your signature. Correct?

A    Yes.

Q    Okay.  Your husband also has his signature.  Do you believe that that'd be his signature as well?

A    Yes.

Q    Okay.  You recall -- was this -- did you go to court and sign this, or was it done --

A    Yes.

Q    Okay.  So you were -- you and your husband both went that day.  Correct?

**A**   Yes.

**Q**   Okay.  In your -- well, strike that.

As you sit here today you would agree that you can't tell me how the garnishment applications altered any of your decisions with regard to the debt at issue.  Correct?

**A**   **Correct.**

**Q**   Okay.  In your discovery you -- you mentioned that you felt harassed.

In what way did you feel harassed?

**A**   **I don't know.**

**Q**   Okay.  In your discovery you state that you felt oppressed.

In what way did you feel oppressed?

**A**   **I don't know.**

**Q**   Did you ever seek any medical treatment for anxiety or things of that nature as the result of this --

**A**   **No.**

**Q**   -- debt?

**A**   **No.**

**Q**   Okay.  Not something you suffer from.  Correct?

**A**   **No.**

**Q**   That's correct?

**A**     **That's correct.**

Q     Okay.  And I apologize.  If you go back to Exhibit A, you -- I think I asked you this, but I want to make sure -- you would agree that the debt plus cost that you agreed to pay, not including interest, was $9,351.14.  Correct?

**A**     **Say that again.  Oh, right there.  Okay.**

MR. CHRISTIAN:  I'm going to object to misstatement.  What interest are we talking about here?

Q     (By Mr. Hunkins) You -- strike that.

Let me ask you this:  You agreed that you -- you agreed to pay $9,351.14.  Correct?

**A**     **Correct.**

Q     Okay.  And you also -- we -- we went over this earlier -- but you agreed that if you did not make your payments as agreed upon in this judgment, that Perry County Memorial Hospital retained the right to take all actions authorized by law. Correct?

**A**     **Correct.**

Q     Okay.  And that would include collecting a 9 percent interest per annum as authorized under law.  Correct?

**A**     **I --**

MR. CHRISTIAN:  Objection.  Calls for a legal conclusion.

A     I don't know about that.

Q     (By Mr. Hunkins) That's fair.

Do you have any evidence that my client knowingly, willingly, or intentionally -- strike that.

Do you have any evidence that my client knowingly, willfully, or intentionally intended to harm you with respect to this debt?

A     I don't know.

Q     Okay.  You -- you never met Rob before any of this --

A     No.

Q     -- stuff.  Correct?

Okay.

MR. HUNKINS:  Okay.  I don't have any other questions.

EXAMINATION

QUESTIONS BY MR. CHRISTIAN:

Q     Okay, Ms. Essmyer, I'm going to ask you just a couple of questions.  And then if the opposing attorney has nothing else to say, then you will be done here today.

A     Okay.

Q   Just a couple of questions.

If we can look at what has been marked as Exhibit D, which is all the payments that we went through.  And I believe it's the first three of them, which would be Defendant 0094, 95, and 96.

**A   Yes.**

Q   Okay.  If -- correct me if I'm wrong, but those are, it looks like, two cash payments and a money order that I believe was represented that you -- that you provided before garnishment was put into place.

Does that sound right?

**A   Yes.**

Q   And how did you make those payments?  Did you mail them in?  Did you bring them in?  Do you remember?

**A   I brought them in.**

Q   And who did you bring them to?

**A   His secretary.**

Q   And by his, who are we referring to?

**A   Mr. Huelskamp.**

Q   Okay.  Earlier there was some discussion regarding -- regarding what was marked as Exhibit F -- and those are -- there was a lot of discussion about that exhibit.

Was -- during that discussion, were you confused at any point as to what this document was?

A    Yes, I was.

Q    And in your opinion now, what is this document?

A    **This is from my lawyer that was on text -- e-mail to my phone that I could look over.**

Q    And did you take an opportunity to look over the document that was sent to you by your attorneys via e-mail?

A    Yes.

Q    And after reviewing it, did you see any attachments that -- or documents that would accompany this Exhibit F?

A    Yes.

Q    And did you review those documents?

A    Yes.

Q    After reviewing that, did you do anything else before returning it to your attorney?

A    No.

Q    Did you go through a process to affix a digital signature?

A    Yes.

Q    And did you, then, return everything to your attorney?

A    Yes.

Q    Going back a little bit.

There was -- I believe it was in -- you were estimating June or July of 2021 was when you went and spoke with Attorney Huelskamp --

A    Yes.

Q    -- in person, if I remember correctly.  Is that right?

A    Yes.

Q    And you were having, I believe, some trouble remembering the exact contents of what was said during that meeting.  Is that correct?

A    Yes.

Q    Did you ever in that meeting ask Mr. Huelskamp what amount you owed for the rest of this debt?

A    Yes.

Q    Was Mr. Huelskamp able to give you an amount that you owed?

A    No.

Q    Did he provide any reason why he couldn't provide you that amount?

A    No.

Q    Earlier Mr. Huelskamp's attorney brought up words like harassed, oppressed, and you said you

really didn't know how to respond to how that had occurred in this case.

A    Right.

MR. HUNKINS:  Object to the form. Misstates her testimony.

Q    (By Mr. Christian) On the day that you did go and see Mr. Huelskamp in his office, regardless of when it was, why -- what was the impetus for you to go in that day and speak with him?

A    Because it'd been going on -- the garnishment had been going on for several years, and I -- and it was about time to be done.  And when my husband and I went there, it was obvious to us that it was not going to be done and the math didn't add up.  And, then, I was getting nowhere with Mr. Huelskamp because I guess he didn't care.  He actually said most people don't come in here and question this.

Q    And when you say the math didn't add up, did you have a sheet of paper that you were making notes on?

A    No.

Q    Or -- just for clarity, was the answer no to that?

A    Sorry, yes.  No.

Q   And so when you say the math didn't add up, where were you performing the math?

**A   My husband was performing the math, I actually was not.**

Q   Okay.

MR. CHRISTIAN:  Okay, Ms. Essmyer, I have no more questions at this time.  I'm going to turn it over to Mr. Huelskamp's attorney just to see if he has any final follow-ups.

MR. HUNKINS:  I do.  I have some questions.

EXAMINATION

FURTHER QUESTIONS BY MR. HUNKINS:

Q   Multiple times while I was asking you questions I asked if you could recall any conversation you had with Mr. Huelskamp when you went and spoke with him.

Do you recall me asking those questions?

**A   Yes.**

Q   Okay.  And you told me you couldn't remember any of those, any conv -- specific conversations you had.  Correct?

**A   Yes.**

Q   Okay.  And now when your attorney asked you questions, you recall specific conversations you

had with Mr. Huelskamp.  Correct?

A    Yes.

Q    Okay.  And -- and those conversations are what?  What -- what do you recall Mr. Huelskamp telling you?

A    Basically nothing, and most people don't come in and ask about the garnishments and how much longer.

Q    How did you come to remember that in the --

A    I had --

Q    -- short time frame?

A    I'm being a little confused about stuff, so it took me a little bit to remember.

Q    What -- what are you confused about?

A    I was a little confused about some questioning, so I was replaying it in my mind.  And, yes, I had a conversation with him.

Q    You recall at the beginning of the deposition I asked if any of my questions are confusing, that you need to let me know that.

You recall that?

A    And I did.

Q    Okay.  Well, you didn't.

A    Well, I did once.  But, yes.

Q   Other than what you've said now after meeting with your lawyers, anything else that you can remember --

A   No.

Q   -- with regard to your conversation with Mr. Huelskamp?

**A   Basically, my husband and I went in there. My husband told him the math did not add up.  He could basically care less about it.  And that was it.**

Q   And what was the math at that time?

**A   I -- I don't remember.  Like, my husband is the one that is pretty good with math.**

Q   So your husband was dealing all that -- dealing with all that?

**A   He was with me at his office talking to him.**

MR. HUELSKAMP:  He wasn't there.

THE WITNESS:  Uh-huh.  He sure was.

Q   (By Mr. Hunkins) Is Joseph still employed by Piva?

**A   Yes.**

Q   Okay.  Has he ever been let go?

**A   No.**

Q   The math wasn't adding up, I mean,

you're -- you're not sitting here and telling me today that in July or August of 2021 that you had paid off all of the debt.  Correct?

A    No.

Q    Okay.  You still had debt that you had to pay off.  Correct?

A    Yes.

Q    And you stated that the garnishment had been ongoing for a couple years.  Right?

A    Yes.

Q    The garnishment didn't start until 2021. Correct?

A    **I thought it started in 2020.**

Q    No.

A    **Hmmm.**

Q    You remember -- we can pull it back out -- Exhibit A was your consent judgment.  Correct?

A    Yes.

Q    And that was -- that was filed and signed by you on September 12th of 2020.  Correct?

A    Yes.

Q    Okay.  And then you made three payments. Correct?

A    **Yes.**

Q    And then you stopped making payments.

Correct?

A     Yes.

Q     Okay.  So that would take us into 2021. Correct?

A     Yes.

Q     Okay.  So you hadn't been garnishing your wages for a couple years.  Correct?

A     No.  I --

Q     That's correct?

A     Sorry.  Yes.

Q     And the debt has been outstanding since 2014.  Correct?

MR. CHRISTIAN:  Objection.  Calls for a legal conclusion.

MR. HUNKINS:  Let me ask a different way.

Q     (By Mr. Hunkins) You incurred this debt as a result of services performed in 2014.  Correct?

A     I guess I did.

Q     Okay.  And during that whole time frame you weren't anxious or didn't have anxiety as a result of this outstanding debt, correct, dating back to 2014?

A     No.

Q     Okay.  It was only when you had to start paying that debt you started feeling anxious?

**A**    No.

Q    Did -- so you never felt anxious.  Right?

**A    Whenever I felt like it was not being done right, yeah, I started feeling anxious.**

Q    Okay.  And when was that?

**A    I can't remember the date.**

Q    Was that in July or -- or June or July of '21 when you met with him?

**A    I don't know.**

Q    Well, that's when you said you --

**A    I don't -- I don't know the dates.**

Q    That's when you said you started feeling like it wasn't adding up.  Right?

**A    I believe that's the date, but I'm not for sure.**

Q    Okay.  As you sit here today, can you point me to any documents showing that you've paid more than the principal plus costs associated with your debt?

MR. CHRISTIAN:  Objection.  Calls for a legal conclusion.

You can go ahead and respond, though.

**A    No.**

MR. HUNKINS:  Okay.  I don't have any other questions.

MR. CHRISTIAN:  I have one follow-up question, Ms. Essmyer.

EXAMINATION

FURTHER QUESTIONS BY MR. CHRISTIAN:

Q   Several times Mr. Huelskamp's attorney referred to the debt when he was asking you questions.

**A   Yes.**

Q   In your words, what is the debt?  Can you explain what the debt is to me?

**A   The debt is what I owed the hospital for services rendered.**

MR. CHRISTIAN:  That's all I have.

MR. HUNKINS:  Okay.

COURT REPORTER:  Signature?

MR. CHRISTIAN:  Yes, please.

COURT REPORTER:  She'll read and sign?

MR. CHRISTIAN:  Yes.

COURT REPORTER:  And can I get orders?

MR. CHRISTIAN:  E-tran.

MR. HUNKINS:  Same.

COURT REPORTER:  And scan the exhibits?

MR. CHRISTIAN:  Probably, yeah.

MR. HUNKINS:  Yeah.

(Deposition concluded at 11:23 a.m.)

CERTIFICATE OF REPORTER

I, Julie Ann Whiting, Certified Court Reporter within and for the State of Missouri, and Registered Professional Reporter, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly placed under oath by me; the testimony of said witness was taken by me to the best of my ability and thereafter reduced to typewriting under my direction; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.

_____

Julie Ann Whiting, CCR 830, RPR

State of Missouri

I, CONNIE ESSMYER, do hereby certify:

That I have read the foregoing deposition;

That I have made such changes in form and/or substance to the within deposition as might be necessary to render the same true and correct;

That having made such changes thereon, I hereby subscribe my name to the deposition.

I declare under penalty of perjury that the foregoing is true and correct.

Executed the _____ day of _____, 20___, at

_____.


_____.


My Commission Expires:

_____

Notary Public:

_____

JAW/

Errata Sheet

Witness:  CONNIE ESSMYER

In Re:  CONNIE ESSMYER VS. HUELSKAMP LAW, LLC

Upon reading the deposition and before subscribing thereto the deponent indicated the following changes should be made:

Page    Line    Should read:
Reason assigned for change :

Page    Line    Should read:
Reason assigned for change :

Page    Line    Should read:
Reason assigned for change :

Page    Line    Should read:
Reason assigned for change :

Page    Line    Should read:
Reason assigned for change :

Page    Line    Should read:
Reason assigned for change :

Page    Line    Should read:
Reason assigned for change :

Page    Line    Should read:
Reason assigned for change :

Page    Line    Should read:
Reason assigned for change :

Page    Line    Should read:
Reason assigned for change :

Page    Line    Should read:
Reason assigned for change :

Reporter:  Julie Ann Whiting

**A**

a.m 3:16,17 5:9 28:18,19 42:4,5 56:25
ability 57:10
able 22:9 48:18
Absolutely 42:3
accompany 47:14
accounting 25:7
accurate 24:19
accurately 6:19
action 15:25 57:13,18
actions 38:16 44:19
add 23:4,5 28:8 28:13 49:14,19 50:1 52:8
adding 40:4,6,9 40:22 52:25 55:13
additional 17:18
address 8:22
ADP 2:14
affix 47:21
age 5:11
ago 10:17,18 17:9
agree 12:8 13:12 14:19 15:2 34:14 43:3 44:4
agreed 5:1 15:22 44:5,12,13,16 44:17
agrees 13:8
ahead 55:22
allegation 39:4,6 39:7
alleged 14:13
allow 26:12
altered 43:5
America 9:4
amount 12:10 13:9 19:2,23 21:5 28:9 29:18 48:15,19,22
amounts 25:11,15
and/or 58:4
Ann 1:14 3:17 4:22 5:4 57:3,22 59:22
annum 44:23
answer 6:17,23 12:14 22:12 25:6 26:20 49:23
answers 5:22 24:19

anticipate 6:15
anxiety 43:17 54:20
anxious 54:20,25 55:2,4
apologize 44:2
APPEARING 4:2 4:8
appears 57:7
application 20:5
applications 43:4
approximate 37:5
arose 13:17 14:13 14:20
asked 42:14 44:3 50:15,24 51:20
asking 6:12,16,18 22:11 24:3 28:22 50:14,18 56:6
asks 25:6
assigned 59:6,8,9 59:11,12,14,15 59:17,18,20,21
associated 55:18
assume 7:18
assuming 7:19 25:4
attached 2:19
attachments 47:13
attempt 41:8
attorney 22:9,12 45:23 47:19,25 48:5,24 50:8,24 56:5 57:15
attorneys 47:10
August 41:20 53:2
authorized 15:25 44:19,23
aware 16:12 17:6 17:16 19:14,15 19:18 23:10 27:11 34:6

**B**

B 2:9 13:20 14:5
back 10:12,24 13:17 15:1 42:9 44:2 48:2 53:16 54:22
back-story 11:20
bad 18:24
balance 15:8
basically 51:6 52:7,9

basis 39:6,7
Bates 20:18 30:19
began 16:13
beginning 51:19
behalf 1:12 4:2,8 5:12
belief 24:21
believe 8:10 14:18 21:21 31:22 41:24 42:18 46:4,9 48:3,10 55:14
best 12:18 24:20 57:9
better 20:14 22:6 23:17
bill 12:3
birth 7:24
bit 48:2 51:14
boss 10:5
Boulevard 3:15 4:4
break 7:2 42:2
bring 46:15,18
Broadway 4:23
brought 46:17 48:24
Bub 4:9

**C**

C 2:11 4:1 8:23 17:22,25
calculate 28:24
calculations 40:8
Caleb 4:3
caleb@voytasl... 4:6
call 36:25 39:9,12 41:8
Calls 45:1 54:13 55:20
care 49:16 52:9
case 1:4 3:4 8:8 14:6 20:16 23:9 49:2
cash 2:13 16:24 29:9,11 46:8
cause 3:20
caution 30:16
CCR 1:14 4:22 57:22
cell 39:13
certain 24:3
CERTIFICATE 57:1
Certified 3:18 5:5 57:3

certify 57:6 58:1
chance 17:25
change 23:21,23 27:23 59:6,8,9 59:11,12,14,15 59:17,18,20,21
changes 58:3,7 59:4
check 29:15
checks 2:13
Christian 2:3,5 4:3 12:23 13:23 14:1 20:20 21:17,24 26:11 28:15 31:22 32:15,19,21 42:3 44:8 45:1 45:20 49:6 50:6 54:13 55:20 56:1,4,13,16,18 56:20,23
claim 28:5 38:20
clarity 49:23
client 36:21 41:24 45:5,8
client's 36:18
collecting 44:22
collection 20:13
come 22:3 49:17 51:7,9
comes 20:25 33:23
Commission 58:19
company 34:21
Complaint 2:10 14:6,19,23 26:22 35:4
computer 28:24 28:25
concluded 56:25
conclusion 45:2 54:14 55:21
Confession 2:8
confused 26:7 47:2 51:13,15 51:16
confusing 51:21
Congratulations 8:19
Connie 1:2,12 3:2 3:12,22 5:3,10 5:17 13:8 58:1 59:2,3
consent 13:1 15:2 15:20 16:4,7 42:10 53:17

consistently 9:22
contained 24:19
contents 48:11
conv 50:21
conversation 37:21 38:1,6 40:20,20 50:16 51:18 52:5
conversations 50:22,25 51:3
copies 2:19
copy 12:22 13:24
correct 8:9 13:18 14:24 15:8,11 15:20 16:1,4 17:7 18:12,15 18:18,22 19:11 21:6,8,11 24:23 28:6 29:7,9,11 29:13,19,21,23 29:25 30:2,4,6,8 30:10,12,14,23 30:25 31:2,8,10 31:12,14,16,18 31:20 32:2,4,6,8 32:10,12,14,24 33:2,4,6,8,10,12 33:14,16,18,21 33:25 34:4,7,10 34:12,16,21 40:17,21,25 42:15,25 43:6,7 43:23,25 44:1,6 44:13,14,20,21 44:24 45:15 46:7 48:12 50:22 51:1 53:3 53:6,12,17,20 53:23 54:1,4,7,9 54:12,17,21 58:6,10
correctly 13:10 25:16,17 48:7
cost 44:5
costs 55:18
counsel 5:2,2 57:11,15
County 12:4,9 13:8,13 15:24 44:18
couple 39:18,19 41:13 45:22 46:1 53:9 54:7
course 17:20
court 1:1 3:1,18 3:21 4:21 5:5 6:8 42:22 56:15 56:17,19,22

57:3
**courthouse** 22:18
  34:21,23 35:8
  35:11,16
**courtroom** 5:21
  5:24
**crunched** 21:18
**curiosity** 11:16
**Curious** 12:1
**current** 10:8
**currently** 8:1 10:6

**D**

**D** 2:12 20:10,13
  28:21 33:24
  46:3
**Dan** 26:11 28:15
**Daniel** 4:9
**date** 7:24 27:20
  36:21 37:4,5
  38:15 40:14
  41:21 55:6,14
**dated** 2:11
**dates** 25:11,14
  55:11
**dating** 13:17
  54:21
**day** 3:13 42:25
  49:6,9 58:12
**dealing** 52:14,15
**debt** 8:8 12:8
  13:13 14:13,19
  15:23 19:7,10
  43:6,20 44:4
  45:10 48:16
  53:3,5 54:11,16
  54:21,25 55:19
  56:6,9,10,11
**decisions** 43:5
**declare** 58:9
**Defendant** 1:6,12
  2:16 3:6,24 4:8
  5:3,12 14:14
  24:17 25:11
  32:1 46:5
**Defendant's** 2:8,9
  2:11,12,14,15
  12:19 13:20
  17:22 20:10
  22:21 24:9
**deliver** 36:17
**department** 25:13
**deponent** 59:4
**deposes** 5:12
**deposit** 20:2
**deposition** 1:12
  3:12 5:3,9 6:1

7:10 51:20
  56:25 57:7,13
  58:2,4,8 59:4
**dhunkins@ww...**
  4:11
**different** 22:10,25
  23:2 38:11,24
  54:15
**digital** 47:22
**direct** 20:2
**direction** 57:11
**discovery** 7:13
  27:2 43:8,12
**discussion** 46:22
  46:25 47:1
**dispute** 21:2
**disputes** 28:5
**District** 1:1,1 3:1
  3:1,21,21
**document** 12:25
  14:9 17:6 20:24
  21:4,10,13,20
  23:7,13 25:18
  25:19,22 27:6,8
  27:19 28:8 34:6
  36:1 47:2,5,9
**documentation**
  16:21 22:19
  23:22,24
**documents** 7:11
  20:14 22:5,8,9
  22:17 24:2
  25:25 34:9,10
  34:14 47:13,16
  55:17
**DocuSign** 24:22
**doing** 6:11
**dollars** 19:23
**doors** 9:10
**duly** 57:7
**dumb** 27:17

**E**

**E** 2:14 4:1,1 22:21
  22:24 25:19
  27:15
**e-mail** 36:25 47:7
  47:10
**E-tran** 56:20
**earlier** 27:23
  34:20 36:13
  41:2 44:16
  46:22 48:24
**Eastern** 1:1 3:1
  3:21
**eight** 9:7,8,24
**either** 19:17

**electronic** 20:2,3
**electronically**
  2:19 26:24
**employed** 9:1,5
  15:11 52:20
  57:12,15
**employee** 57:15
**entered** 16:7
**entries** 28:14
**entry** 2:8 13:1
  42:10
**Errata** 59:1
**Esq** 4:3,4,9
**Essmyer** 1:2,12
  3:2,12,22 5:3,10
  5:17 8:4 13:7,8
  21:21 45:21
  50:6 56:2 58:1
  59:2,3
**establishing**
  17:17
**estimating** 48:4
**evidence** 45:5,8
**exact** 28:9 37:4
  48:11
**Examination** 2:2
  2:3,4,5 5:13
  45:19 50:12
  56:3
**examined** 3:13
  5:11
**Executed** 58:12
**exhibit** 2:7,8,9,11
  2:12,14,15
  12:19,25 13:20
  14:5 15:1 17:22
  17:25 20:10,13
  22:21,24 24:8,9
  25:19 27:15
  28:21 33:24
  42:9 44:3 46:3
  46:24,25 47:14
  53:17
**exhibits** 2:19
  56:22
**expect** 7:1
**Expires** 58:19
**explain** 26:16
  56:10
**expressly** 5:7
**extra** 13:24

**F**

**F** 2:15 13:7 24:8,9
  46:24 47:14
**fact** 19:15
**failed** 15:23

**fair** 11:24 45:4
**far** 6:11 35:7,25
**February** 18:10
**feel** 6:21 43:10,14
**feeling** 54:25 55:4
  55:12
**felt** 43:9,13 55:2,3
**Fifteen** 11:12
**filed** 8:11 13:2
  14:6,24 26:22
  35:4 53:19
**final** 50:9
**financially** 57:16
**fine** 12:23
**firm** 26:19
**first** 2:16 13:6
  24:18 26:1,2
  29:7 46:4
**Five** 10:23
**flip** 14:12,22
  15:18 42:13
**follow** 41:5
**follow-up** 39:25
  41:16 56:1
**follow-ups** 50:9
**following** 16:6
  59:4
**foregoing** 24:17
  57:7 58:2,10
**form** 49:4 58:3
**frame** 51:12 54:19
**frames** 9:16,16
**front** 5:23 14:22
  28:25 34:11,12
**full** 15:8
**fully** 25:24
**further** 2:4,5
  50:13 56:4
  57:14

**G**

**garnished** 19:16
  19:23 37:24
**garnishing** 16:13
  16:16 54:6
**garnishment** 17:5
  17:12,13 20:5
  25:8 26:21
  29:15 35:21
  37:11,24 40:6
  41:18 43:4
  46:10 49:11
  53:8,11
**garnishments**
  51:7
**Gen** 8:21
**Genevieve** 8:23

**getting** 49:15
**give** 5:22 26:7
  35:2 48:18
**go** 6:6 11:21
  20:22 28:11,13
  28:15,21,23
  34:23 37:11,23
  42:22 44:2
  47:21 49:7,9
  52:23 55:22
**going** 6:6,16
  10:24 11:20
  15:1 17:24
  20:12 21:18
  26:12 28:21,22
  28:23 37:6,10
  40:1,3 41:17
  42:7 44:8 45:21
  48:2 49:10,11
  49:14 50:7
**good** 6:11 52:13
**ground** 6:5
**guess** 18:23
  20:14 27:17
  41:9 49:16
  54:18
**guessing** 28:1,2
**guys** 8:16,20

**H**

**hand** 17:24 20:12
**handing** 14:4
**handwriting** 18:5
**Handwritten** 2:11
**handwrote** 36:13
**Hansmann** 4:9
**happen** 10:15
**happened** 41:23
**harassed** 43:9,10
  48:25
**harm** 45:10
**head** 22:4
**hear** 7:19
**held** 10:1
**help** 12:18
**Hmmm** 53:15
**home** 23:8 27:9
  28:8
**honestly** 5:23
**hospital** 12:5,9
  13:9,14 14:15
  15:24 18:18
  44:18 56:11
**hourly** 11:1,2,3,11
**hours** 3:16
**house** 27:20
**HR** 25:13

**Huelskamp** 1:5 2:16 3:5,23 4:17 24:18 37:17 46:21 48:5,15 48:18 49:7,16 50:16 51:1,4 52:6,18 59:3
**Huelskamp's** 48:24 50:8 56:5
**Hunkins** 2:2,4 4:9 5:14 12:21,24 13:22,24 14:2,4 15:13,16 17:24 20:12,17,21 22:2,23 24:6,11 26:14,17 28:17 28:20 30:18 31:24,25 32:17 32:20,22,23 42:2,6 44:11 45:4,17 49:4 50:10,13 52:20 54:15,16 55:24 56:14,21,24
**husband** 40:8,11 40:16 42:17,24 49:13 50:3 52:7 52:8,12,14

**I**

**idea** 16:17
**identification** 12:20 13:21 17:23 20:11 22:22 24:10
**impetus** 49:8
**include** 44:22
**including** 44:5
**incurred** 12:4 54:16
**INDEX** 2:1,7
**indicated** 59:4
**indicating** 23:6 37:14
**information** 24:20 35:19,20,22
**initial** 12:13
**intend** 6:24
**intended** 45:9
**intentionally** 45:6 45:9
**interest** 44:6,9,23
**interested** 57:17
**interrogatories** 2:16 24:2,18 26:3
**interrogatory**

25:5
**interrupting** 6:22
**investigation** 23:12,14 41:18
**issue** 8:8 14:20 43:6
**issued** 17:5
**it'd** 49:10

**J**

**Jacob** 4:4
**jacob@voytasl...** 4:6
**JAW/** 58:23
**job** 6:11 9:21 18:16
**Joseph** 8:4,6,7,7 8:14,24 13:7,7 15:11,19 52:20
**judge** 5:24
**judgment** 2:8 13:1 13:1 15:2,20 16:4,7 42:10,10 44:17 53:17
**Julie** 1:14 3:17 4:22 5:4 57:3,22 59:22
**July** 37:7,8 38:14 39:15,22 40:13 48:4 53:2 55:7,7
**June** 37:6,8 38:14 39:15,20 40:13 48:4 55:7

**K**

**keep** 28:22
**Kellwood** 4:10
**kind** 35:20 36:5
**know** 6:16,23 7:3 7:7 12:11,12,14 12:15,16 13:19 16:8 18:20 19:6 19:12,13,17 21:7 22:4,14 25:10 27:17,21 28:7,10 32:17 34:5,8,13 36:2 37:13 38:7,17 38:25 39:3 42:1 43:11,15 45:3 45:11 49:1 51:21 55:9,11
**knowingly** 45:6,9
**knowledge** 21:20 24:20

**L**

**laid** 18:16
**law** 1:5 2:16 3:5 3:14,23 4:3 15:25 26:19 44:19,24 59:3
**lawful** 5:11
**lawyer** 6:4 25:25 27:12 47:6
**lawyers** 7:20 52:2
**lead** 10:3,12,22 11:10,17
**leaving** 38:10
**left** 38:8
**legal** 45:2 54:14 55:21
**likewise** 7:5
**Lindbergh** 3:15 4:4
**line** 9:18 10:5,10 11:7,13 59:6,7,9 59:10,12,13,15 59:16,18,19,21
**little** 22:25 26:7 48:2 51:13,14 51:16
**live** 8:20,24
**LLC** 1:5 3:5,23 4:3 4:9 59:3
**LLC's** 2:16 24:18
**long** 7:1 8:16 10:21,22 11:5 38:6 39:17 42:7
**longer** 51:8
**look** 13:5 22:10 25:5 42:9 46:2 47:7,8
**looked** 20:5,8 21:21
**looking** 24:11 33:23
**looks** 18:14 46:8
**lot** 46:24
**Louis** 3:15 4:5,10 4:23
**lying** 26:6

**M**

**ma'am** 12:24 14:4 20:12,21 22:11 23:17 24:1 28:20 34:2 42:6
**magical** 27:5
**mail** 46:15
**making** 9:18 16:23 17:1 19:1 49:20 53:25
**man** 37:14

**mark** 24:7 28:21
**marked** 12:19,24 13:20 14:5 17:22,25 20:10 20:13 22:21 24:9 25:18 33:24 46:2,23
**married** 8:1,3,14 8:17
**math** 20:23 34:18 49:14,19 50:1,2 50:3 52:8,11,13 52:25
**mean** 10:4 17:8 27:16 35:14 40:5 52:25
**means** 10:5
**medical** 14:13 43:16
**meeting** 39:15,19 40:12,15 41:14 41:15 48:12,14 52:2
**Memorial** 12:5,9 13:9,13 14:14 15:24 44:18
**memory** 19:1
**mentioned** 34:20 43:9
**met** 45:12 55:8
**mind** 51:17
**Mine's** 22:25
**minute** 26:8,9,13 32:18
**misrepresentati...** 32:16
**Missouri** 1:1 3:1 3:16,19,22 4:5 4:10,23 8:21 57:4,23
**misstatement** 44:9
**Misstates** 49:5
**modify** 38:16
**Mohrmann** 4:4
**money** 17:1 18:21 19:1,7 27:7 29:13 46:9
**month** 15:4
**monthly** 15:3
**multiple** 38:21 50:14

**N**

**N** 4:1
**name** 5:15 58:8
**nature** 43:17

**necessary** 58:5
**need** 6:7 7:2 13:25 51:21
**neither** 57:11
**never** 20:8 45:12 55:2
**night** 20:19
**North** 9:4
**nosy** 11:25
**Notary** 58:21
**note** 2:11 36:12
**notes** 49:21
**notice** 8:7
**number** 22:3,10 23:6,19,20 25:5 27:25 39:12
**numbers** 21:18 29:3

**O**

**oath** 5:19 57:8
**object** 21:19 44:8 49:4
**Objection** 32:15 45:1 54:13 55:20
**obvious** 49:13
**occurred** 49:2
**October** 1:13 3:13 14:24 35:4
**office** 36:18,21 37:18 38:21 40:10 41:8 49:7 52:16
**offices** 3:14
**oh** 14:1 30:15,15 30:17 41:2 44:7
**okay** 6:4,6,9,13,19 6:20,24,25 7:3,4 7:8,9,18,22 8:11 8:16 9:15,21 10:8,15 11:16 12:8,12,17 13:5 13:12,16,23 14:9,12,18,22 15:10,22 16:3,6 16:16,20,23 17:1,15,20 18:5 18:20,24 19:4,9 19:13,20 20:1 20:21 21:1,4,13 22:2,7,15,20 23:11,18,22 24:5,25 25:2,5 25:18 26:6,15 26:18,21,23,23 26:25 27:1,10

27:18 28:3,14
29:2,7 30:23
34:2,18,20
35:10 36:6,12
36:20,25 37:3
37:18 39:8,10
39:14,17,24
40:5,12,24 41:3
41:4,11,13,22
42:17,21,24
43:2,8,12,22
44:2,7,15,22
45:12,16,17,21
45:25 46:7,22
50:5,6,20,24
51:3,24 52:23
53:5,22 54:3,6
54:19,24 55:5
55:16,24 56:14
**once** 36:24 51:25
**ongoing** 53:9
**opinion** 47:4
**opportunity** 47:8
**opposing** 45:23
**oppressed** 43:13
43:14 48:25
**order** 17:1 18:22
19:2 20:6 29:13
46:9
**orders** 56:19
**original** 2:19 8:8
**originally** 12:4
**outcome** 57:17
**outside** 17:15
22:8
**outstanding**
54:11,21
**owe** 13:13
**owed** 12:9 15:23
48:15,19 56:11
**owes** 13:8

**P**

**P** 4:1,1,9
**P-I-V-A** 15:14
**page** 2:2,3,4,5,8,9
2:11,12,14,15
13:6 14:23
15:18 24:14
25:6 42:13 59:6
59:7,9,10,12,13
59:15,16,18,19
59:21
**paid** 11:1 15:8
17:7 19:7,10
21:5,11 23:23
27:6 28:5 34:3,7

35:24 53:3
55:17
**paper** 26:16 49:20
**Paperwork** 35:24
**paragraph** 13:7
14:12
**Parkway** 4:10
**part** 8:7
**parties** 57:13,16
**Party** 2:8
**pass** 13:22
**pay** 2:14 23:24,25
44:5,13 53:6
**paycheck** 19:19
19:20,22 20:1
**paying** 54:25
**payment** 18:17,21
27:20 29:9,11
37:23
**payments** 15:3,7
15:23 16:8,17
16:21,23 17:11
17:18 20:15
21:14 25:7,11
25:15 37:12
44:17 46:3,8,14
53:22,25
**penalty** 58:9
**pending** 3:20
**people** 49:17 51:6
**percent** 44:23
**performed** 54:17
**performing** 50:2,3
**perjury** 58:9
**Perry** 12:4,9 13:8
13:13 15:23
44:18
**Perryville** 34:24
**person** 37:1,2
48:7
**personal** 17:11
**personally** 16:18
36:17
**Petition** 7:16
38:20
**phone** 26:24
36:25 39:13
47:7
**Photocopies** 2:13
**physical** 20:1,3
**Piva** 9:4,5,9 15:11
15:14 19:20,22
52:21
**place** 46:11
**placed** 5:18 57:8
**Plaintiff** 1:3 3:3,23
4:2 5:2 14:14
25:9,12

**Plaintiff's** 2:16
24:17
**please** 5:15 6:23
7:7 56:16
**plus** 29:11,13,15
44:5 55:18
**PohlmanUSA**
4:22
**point** 6:21 7:2
12:13 16:12
18:15 20:4 47:2
55:17
**position** 10:9,22
**positions** 10:1
**possession** 25:10
25:12,14
**possible** 25:21,23
**precise** 25:11
27:25
**preparation** 7:10
**prepared** 6:4 22:9
**PRESENT** 4:16
**pretty** 52:13
**principal** 55:18
**printed** 14:2
**probably** 7:5
26:12 37:6
41:12 56:23
**process** 47:21
**produce** 23:11
27:11 28:4
**produced** 3:12
5:11 20:18 23:9
23:14 25:20
27:6,10,15
**producing** 25:13
27:3,4
**product** 21:19
**Professional** 3:19
57:5
**Profile** 2:14
**proof** 20:15 21:14
**propounded**
26:19
**provide** 25:7
48:21,22
**provided** 13:17
14:20 24:3
46:10
**Public** 58:21
**pull** 53:16
**purpose** 35:18
37:10 39:24
41:16
**put** 46:10
**putting** 29:5

**Q**

**question** 6:12
12:13 18:24
22:6,11 23:17
49:18 56:2
**questioning**
51:17
**questions** 5:14
7:6,7 24:3 25:3
26:17 42:8
45:18,20,22
46:1 50:7,11,13
50:15,18,25
51:20 55:25
56:4,7
**quote** 13:7

**R**

**R** 4:1
**rate** 11:3,11
**rattled** 27:22
**reached** 38:21
**read** 13:10 18:1
24:16,25 25:16
25:17,24 26:1,2
27:2 56:17 58:2
59:6,7,9,10,12
59:13,15,16,18
59:19,21
**reading** 59:4
**realize** 14:2
**really** 19:3 35:9
36:5 40:23 49:1
**reason** 21:2 48:21
59:6,8,9,11,12
59:14,15,17,18
59:20,21
**recall** 16:23 17:1
18:20 19:3 24:1
24:11 25:2
34:25 35:7 37:3
39:17 42:21
50:15,18,25
51:4,19,22
**receipts** 2:13
20:15 34:15
**receive** 35:23
**received** 14:14
**record** 5:16 15:13
28:16,18,19
42:4,5
**recorded** 23:25
**records** 25:10,12
25:13
**reduced** 57:10
**referred** 56:6
**referring** 21:24

22:24 46:20
**regard** 25:8 43:5
52:5
**regarding** 46:23
46:23
**regardless** 49:7
**Registered** 3:19
57:5
**related** 57:12
**relative** 57:14
**rely** 22:5
**remember** 26:23
38:23 46:16
48:7 50:21 51:9
51:14 52:3,12
53:16 55:6
**remembering**
48:11
**render** 58:5
**rendered** 56:12
**rephrase** 7:7
**replaying** 51:17
**reporter** 3:18,20
4:21 5:5 6:8
30:16 56:15,17
56:19,22 57:1,4
57:5 59:22
**represent** 20:22
21:17
**represented** 46:9
**requested** 25:12
**requesting** 18:17
**research** 22:16
**Residential** 9:11
**respect** 45:10
**respond** 6:13 49:1
55:22
**responding** 24:1
25:2
**responses** 2:16
6:7 7:14 24:17
**rest** 48:15
**restroom** 7:3
**result** 26:22 43:17
54:17,21
**retained** 15:24
44:18
**return** 47:24
**returning** 47:19
**review** 7:11,13,16
18:3 47:16
**reviewing** 18:2
47:12,18
**right** 7:24 8:12 9:6
9:17 11:22
13:14 15:4,25
18:7,14 19:20
22:4 26:13,15

28:9,20 29:1,4,5 30:17 35:16 37:14 40:13 44:7,19 46:12 48:8 49:3 53:9 55:2,4,13
**Rob** 38:3 40:17,21 40:24 45:12
**Robert** 4:17
**room** 26:3
**Route** 8:23
**RPR** 1:14 4:22 57:22
**rude** 10:11
**rules** 6:5

**S**

**S** 4:1 13:7
**salary** 11:1
**satisfy** 19:7
**says** 5:12 14:23 18:9 23:23 27:6
**scan** 56:22
**second** 13:6 25:8 28:16
**secretary** 46:19
**see** 13:3 14:7,16 15:19 20:19 25:6 28:21 29:3 29:16 40:1 41:17 47:12 49:7 50:9
**seek** 43:16
**seen** 14:9
**sent** 47:9
**September** 13:2 16:7 41:20 53:20
**services** 13:17 14:13,20 54:17 56:12
**Set** 2:16 24:18
**She'll** 56:17
**sheet** 49:20 59:1
**short** 51:12
**shorthand** 5:4
**show** 17:17 21:4 21:10 28:4
**showed** 19:19,22
**showing** 16:21 17:6 21:5,10 34:6 35:24 55:17
**shows** 21:14 25:14
**sign** 42:22 56:17
**signature** 5:6

42:14,18,19 47:22 56:15
**signed** 15:19 42:11 53:19
**signing** 15:17 16:4 26:6
**single** 28:13
**sit** 16:20 19:6 27:18 28:3 34:2 40:19 43:3 55:16
**sit-down** 40:10
**sitting** 26:3 53:1
**skipping** 15:1
**sorry** 8:5 12:21 13:22 37:15 49:25 54:10
**sound** 46:12
**sounds** 10:12
**South** 3:14 4:4,23
**speak** 37:13 49:9
**specific** 16:11 37:25 40:20 50:21,25
**spoke** 7:19 48:5 50:17
**St** 3:15 4:5,10,23
**stamp** 30:19
**stamped** 20:18
**start** 5:9 10:9 53:11 54:24
**started** 53:13 54:25 55:4,12
**state** 3:19 5:15 8:23 43:12 57:4 57:23
**stated** 53:8
**states** 1:1 3:1,21 13:6 14:13 15:3 15:6,10 24:16
**Ste** 8:21,23
**step** 10:12
**stepping** 6:22
**STIPULATED** 5:1
**stopped** 53:25
**strike** 15:6,17 17:21 19:14 32:1 33:20 43:2 44:11 45:6
**stuff** 45:15 51:13
**subscribe** 58:8
**subscribing** 59:4
**substance** 58:4
**Sue** 5:17
**suffer** 43:22
**suit** 8:12
**Suite** 3:15 4:4,10 4:23

**sure** 6:4 12:11 16:12 17:8,10 36:19 37:9 38:15 40:14 41:21 44:4 52:19 55:15
**sworn** 3:13 5:11

**T**

**take** 6:8,18 7:2 15:25 17:25 26:12 42:2 44:19 47:8 54:3
**taken** 1:12 5:4 6:1 57:9,14
**talk** 12:3 40:10,17
**talked** 37:19 39:1
**talking** 44:9 52:16
**tell** 12:16 19:9,9 22:12 28:4 34:3 36:4,9 37:22,25 38:3,18 40:19 40:24 43:4
**telling** 27:4 51:5 53:1
**terminology** 9:18
**terrible** 7:6
**terribly** 7:1 42:7
**testimony** 49:5 57:6,8
**text** 47:6
**Thank** 31:24 32:22 33:1
**that'd** 42:18
**thereon** 58:7
**thereto** 57:16 59:4
**things** 9:19 40:1,4 40:5 43:17
**think** 42:14 44:3
**thought** 53:13
**three** 17:15 41:12 46:4 53:22
**three-page** 12:25
**time** 5:9 15:10 16:13 18:15 20:4 26:1,2 39:1 49:12 50:7 51:12 52:11 54:19
**times** 6:15 36:23 38:21 39:11 41:5,11 50:14 56:5
**today** 16:20 19:6 26:4 27:5,18 28:3 34:2 40:20 43:3 45:24 53:2

55:16
**toes** 6:22
**told** 17:15 18:24 36:9 38:3 40:24 41:2 50:20 52:8
**top** 14:23 18:9
**total** 20:24 28:6 33:23
**transcribed** 5:5
**treatment** 43:16
**tried** 40:16
**trouble** 48:11
**true** 24:19 58:5,10
**truthfully** 5:23
**try** 12:18
**trying** 10:11
**turn** 24:14,14 50:8
**two** 10:16,17 11:6 16:23 24:6 41:12 46:8
**typewriting** 5:6 57:10

**U**

**Uh-huh** 10:18 39:5 52:19
**understand** 5:18 5:22 7:6 12:6 16:14
**understanding** 13:16
**understood** 15:16 16:3
**United** 1:1 3:1,20
**use** 7:2

**V**

**v** 1:4 3:4
**vague** 36:5,7
**various** 10:1
**verbal** 6:7
**vinyl** 9:16
**visited** 36:20
**Voytas** 3:14 4:3
**VS** 59:3

**W**

**wages** 16:13,16 19:16,24 54:7
**wait** 6:12,17 30:15 32:17
**waived** 5:7
**want** 6:17 7:18 11:17 16:10 44:4
**wasn't** 23:10 37:15 52:18,25

55:13
**watched** 34:18
**Watters** 4:9
**way** 23:1 38:16 40:7 43:10,14 54:15
**we'll** 28:12,13
**we're** 5:21 12:3 28:22 30:18,18
**we've** 33:24
**weeks** 39:18,19 41:13
**went** 6:5 34:10,15 34:15,20 35:7 35:16 37:18 39:1 40:9,16 42:25 44:15 46:3 48:5 49:13 50:17 52:7
**weren't** 54:20
**What'd** 38:8
**Whiting** 1:14 3:17 4:22 5:4 57:3,22 59:22
**why'd** 23:11
**willfully** 45:9
**willingly** 45:6
**windows** 9:10
**witness** 5:6 21:23 22:1 26:9 52:19 57:6,9 59:2
**Wolf** 4:9
**word** 20:14
**words** 48:25 56:9
**work** 21:19 22:19 22:24
**worker** 10:3,10,13 10:22 11:8,10 11:14,17
**Workforce** 2:14
**written** 24:2
**wrong** 18:15 41:25 46:7
**wrote** 18:7

**X**

**X** 19:23

**Y**

**yeah** 11:20,23 12:2 14:1 21:15 23:13 25:17 28:17 29:6 37:9 39:7 40:14 55:4 56:23,24
**year** 35:2
**years** 8:18 9:7,8

9:24 10:16,17 10:23 11:6 17:9 49:11 53:9 54:7
**Yep** 6:10 24:15

**Z**

**0**

**0094** 46:5
**0121** 32:1

**1**

**1:22-cv-00140** 1:4 3:4
**10** 4:23
**10:29** 28:18
**10:34** 28:19
**10:56** 42:4
**100.54** 33:21
**101.37** 33:18
**102.22** 33:12
**107** 30:21
**11** 25:5
**11:07** 42:5
**11:23** 3:17 56:25
**11212** 8:23
**120** 4:10
**121** 31:23
**127** 32:19
**12th** 13:2 16:7 53:20
**13** 2:8
**14** 2:9
**1400** 4:23
**150** 17:2 18:17,21 19:2 29:13
**154** 33:20
**169.74** 30:4
**17** 2:11
**17.75** 11:4
**176.19** 32:4
**18** 1:13
**182.71** 32:10
**18th** 3:13
**19** 14:24
**191.33** 33:2
**192.97** 30:2
**196.90** 29:25

**2**

**2/28/20** 2:11
**20** 2:12 58:13
**200** 30:15
**2014** 13:18 14:15 14:20 54:12,17 54:22
**2016** 10:24

**2019** 13:2 16:8
**202.97** 29:18
**2020** 18:12 36:15 53:13,20
**2021** 10:19,21 35:3 37:6,8 48:4 53:2,11 54:3
**2022** 14:24 35:5
**2023** 1:13 3:14
**205.39** 33:6
**21** 38:14 39:15,22 40:13 41:20 55:8
**214.96** 32:6
**22** 2:14
**220.58** 30:10
**226.97** 33:8
**230.10** 33:4
**231.10** 30:14
**231.45** 31:14
**233.48** 31:16
**234.55** 29:15
**237** 31:2
**239.28** 32:12
**24** 2:15
**242.68** 29:21
**242.83** 30:25
**245.96** 32:23
**246.64** 31:18
**247.28** 32:8
**248.96** 32:14,21
**249.56** 31:4
**249.74** 31:6
**250** 15:3 16:24 29:7,11
**250.85** 31:8,10
**251.89** 31:12
**251.98** 31:20
**253** 32:1
**253.37** 32:2
**259.63** 29:23
**26** 8:18
**261.46** 30:8
**262.21** 30:12
**273.49** 30:23
**289.57** 30:6

**3**

**314)380-3166** 4:5
**314)421-0099** 4:24

**4**

■ 7:25
**400B** 3:15 4:4
**45** 2:3

**5**

**5** 2:2
**50** 2:4
**56** 2:5

**6**

**600** 4:10
**63017** 4:10
**63102** 4:23
**63125** 4:5
**636)798-0570** 4:11
**650** 17:7

**7**

**7321** 3:14 4:4
**79.50** 33:10

**8**

**8** 18:10
**830** 1:14 57:22
**830(MO)** 4:22
**87.01** 33:16

**9**

**9** 14:12 25:6 44:23
**9,128.79** 12:10 13:9
**9,351.14** 44:6,13
**9,365.75** 20:25 21:11 28:6 33:24 34:4,16
**9,700** 27:22
**9,735** 23:20,23
**9:59** 3:16 5:9
**95** 46:5
**96** 46:5
**97.45** 33:14