

# PohlmanUSA®
## Court Reporting and Litigation Services

Connie Essmyer

October 18, 2023

Connie Essmyer
vs.
Huelskamp Law, LLC

**EXHIBIT A**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

Connie Essmyer,              )
                             )
    Plaintiff,               )
v.                           ) Case No. 1:22-cv-00140
                             )
Huelskamp Law, LLC,          )
                             )
    Defendant.               )

DEPOSITION OF CONNIE ESSMYER
Taken on behalf of the Defendant
October 18, 2023

Julie Ann Whiting, CCR 830, RPR

INDEX

Examination by Mr. Hunkins                    Page 5

Examination by Mr. Christian                  Page 45

Further Examination by Mr. Hunkins            Page 50

Further Examination by Mr. Christian          Page 56


                        EXHIBIT INDEX

Defendant's Exhibit A                         Page 13
     (Entry of Judgment on Confession of Party)

Defendant's Exhibit B                         Page 14
     (Complaint)

Defendant's Exhibit C                         Page 17
     (Handwritten note dated 2/28/20)

Defendant's Exhibit D                         Page 20
     (Photocopies of cash, receipts, and checks)

Defendant's Exhibit E                         Page 22
     (ADP Workforce Now - Pay Profile)

Defendant's Exhibit F                         Page 24
     (Plaintiff's Responses Defendant Huelskamp Law,
     LLC's First Set of Interrogatories)



     (Whereupon, the exhibits are attached
electronically to the original and copies.)

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI

Connie Essmyer,           )
                          )
     Plaintiff,           )
v.                        ) Case No. 1:22-cv-00140
                          )
Huelskamp Law, LLC,       )
                          )
     Defendant.           )


                    DEPOSITION OF CONNIE ESSMYER, produced,

          sworn, and examined on the 18th day of October,

          2023, at the offices of Voytas Law, 7321 South

          Lindbergh Boulevard, Suite 400B, St. Louis,

          Missouri, between the hours of 9:59 a.m. to

          11:23 a.m., before Julie Ann Whiting, a

          Certified Court Reporter within and for the

          State of Missouri and Registered Professional

          Reporter, in a cause now pending In the United

          States District Court, Eastern District of

          Missouri, wherein CONNIE ESSMYER is the

          PLAINTIFF and HUELSKAMP LAW, LLC is the

          DEFENDANT.

A P P E A R A N C E S

APPEARING ON BEHALF OF THE PLAINTIFF:

Voytas Law, LLC
Caleb Christian, Esq.
Jacob Mohrmann, Esq.
7321 South Lindbergh Boulevard, Suite 400B
St. Louis, Missouri  63125
(314)380-3166
caleb@voytaslaw.com
jacob@voytaslaw.com

APPEARING ON BEHALF OF THE DEFENDANT:

Watters Wolf Bub & Hansmann, LLC
Daniel P. Hunkins, Esq.
600 Kellwood Parkway, Suite 120
St. Louis, Missouri  63017
(636)798-0570
dhunkins@wwbhlaw.com

ALSO PRESENT:

Robert Huelskamp

COURT REPORTER:

Julie Ann Whiting, CCR 830(MO), RPR
PohlmanUSA
10 South Broadway, Suite 1400
St. Louis, Missouri  63102
(314)421-0099

IT IS HEREBY STIPULATED AND AGREED, by  and between counsel for the Plaintiff and Counsel for the Defendant, that the Deposition of CONNIE ESSMYER may be taken in shorthand by Julie Ann Whiting, a Certified Court Reporter, and afterwards transcribed into typewriting, and the signature of the witness is expressly not waived.

                    * * * * *

          (Deposition start time:  9:59 a.m.)

                 CONNIE ESSMYER,
of lawful age, being produced, sworn, and examined on behalf of the Defendant, deposes and says:

                    EXAMINATION
QUESTIONS BY MR. HUNKINS:

     Q    Can you please state your name for the record?

     **A    Connie Sue Essmyer.**

     Q    You understand you were just placed under oath?

     **A    Yes.**

     Q    And while we're not in a courtroom, you understand that you -- to give all your answers honestly and truthfully as if you were in front of a judge in a courtroom?

     **A    Yes.**

A    Curious.

Q    Yeah.

And so we're here to talk about the bill that was originally incurred at ▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉

You understand that?

A    Yes.

Q    Okay.  And do you agree that the debt that you owed to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ was in the amount of $9,128.79?

A    I don't know about that.  I'm not sure.

Q    Okay.  I -- I don't know if I said this in the initial.  If any point I ask you a question that you don't know the answer to it, just --

A    I don't know.

Q    -- tell me you don't know and --

A    Okay.

Q    -- I'll try to help you out as best I can.

(Defendant's Exhibit A was marked for identification.)

MR. HUNKINS:  Sorry.  I've only got one copy.

MR. CHRISTIAN:  That's fine.

Q    (By Mr. Hunkins) Ma'am, I've just marked as Exhibit A, it's a three-page document which is

the consent judgment and entry of the judgment that was filed on September 12th, 2019.

Do you see that?

A    Yes.

Q    Okay.  And if you -- if you look over on -- on to the second page, it states in that first paragraph, quote, Joseph S. -- ████████████████ and Connie Essmyer agrees that he owes ███████████ ██████████████████ in the amount of $9,128.79.

Did I read that correctly?

A    Yes.

Q    Okay.  So it -- you would agree that that is the debt that you owe ████████████████████ ████████████.  Right?

A    Yes.

Q    Okay.  And that -- my understanding is that that arose from services provided dating back to 2014.  Is that -- is that correct?

A    I don't know.

**(Defendant's Exhibit B was marked for identification.)**

MR. HUNKINS:  I'll pass it over.  Sorry.

MR. CHRISTIAN:  Okay.

MR. HUNKINS:  I do have an extra copy of this.  Do you need it?

MR. CHRISTIAN:  Oh, yeah.

MR. HUNKINS:  I didn't realize I printed that one.

Q   (By Mr. Hunkins) Ma'am, I'm handing you what has been marked as Exhibit B, which is the Complaint that you filed in this case.

Do you see that?

A   Yes.

Q   Okay.  Have you ever seen this document before?

A   No.

Q   Okay.  If you flip over to paragraph 9, it states, The alleged debt arose from medical services that Plaintiff received from Defendant, ███████ ████████████, in 2014.

Do you see that?

A   Yes.

Q   Okay.  So do you believe -- or do you agree with your Complaint that -- that the debt at issue here arose from services provided in 2014?

A   Yes.

Q   Okay.  And if you flip over to the front page, at the top there it says that the Complaint was filed on October 19 of 2022.  Correct?

A   Yes.

Q    Going back to Exhibit A, it -- skipping down you would agree that the consent judgment states that you would make monthly payments of $250 a month.  Right?

A    Yes.

Q    And it states that you and -- strike that.

And you would make those payments until the balance was paid in full.  Correct?

A    Yes.

Q    Okay.  And at that time it states that you and Joseph were both employed by ███.  Correct?

A    Yes.

MR. HUNKINS:  And just for the record, ████████████████.

A    Yes.

Q    (By Mr. Hunkins) And so you understood by signing -- strike that.

If you flip over to the last page, you could see your -- you and ██████ both signed this consent judgment.  Correct?

A    Yes.

Q    Okay.  And so you agreed that if you failed to make payments for the debt owed to ██████ ███████████████████████████, that they retained the right to take any action authorized by law.

Correct?

A    Yes.

Q    Okay.  And you understood that when signing this consent judgment.  Correct?

A    Yes.

Q    Okay.  And so do you -- following -- after this consent judgment was entered on September 12th of 2019, do you know how many payments you made?

A    No.

Q    And I -- I just want to be -- be more specific.

So as I'm sure you're aware, at some point in time they began garnishing your wages.

You understand that?

A    Yes.

Q    Okay.  Before garnishing your wages, do you -- do you have any idea how many payments you personally made?

A    No.

Q    Okay.  So as you sit here today, you have no documentation showing how many payments you made?

A    No.

Q    Okay.  Do you recall making two payments of $250 each, in cash?

A    No.

Q    Okay.  Do you recall making a money order of $150?

A    No.

Q    No?

So before any garnishment was issued you're not aware of any document showing that you paid more than $650.  Correct?

A    **No.  I mean, I'm -- I'm sure I did, but it's been a few years ago.**

Q    You're sure you did what?

A    **Made some personal payments without a garnishment.**

Q    Before the garnishment?

A    **Before.**

Q    Okay.  Outside of the three that I've told you about, are you aware of any -- can you -- can you show anything to me establishing that you've made additional payments?

A    **No, I can't.**

Q    Okay.  And then over the course of -- strike that.

(Defendant's Exhibit C was marked for identification.)

Q    (By Mr. Hunkins) I'm going to hand you what I've marked as Exhibit C.  Take a chance and --

and read over that.

A    (Reviewing.)

Q    Did you review it?

A    Yes.

Q    Okay.  Is that your handwriting?

A    Yes.

Q    All right.  So you wrote this?

A    Yes.

Q    And at the top there it says on February 8 --

A    Yes.

Q    -- of 2020.  Correct?

A    Yes.

Q    All right.  And so it looks like at this point in time -- and correct me if I'm wrong -- but you were laid off from your job, and so you were requesting to only make a payment of $150 to the hospital.  Correct?

A    Yes.

Q    Okay.  And then -- I know you don't recall it, but then you made one $150 payment by money order.  Correct?

A    I guess.

Q    Okay.  That was a bad question.  So I told you I would ask them.

Q    Okay.  And is that a physical paycheck? Was it electronic or direct deposit?

**A     It was not physical, it was electronic.**

Q    Did you -- at any point in time, have you ever looked at the garnishment application and order?

**A     No.**

Q    Never looked at any of them?

**A     No.**

**(Defendant's Exhibit D was marked for identification.)**

Q    (By Mr. Hunkins) Ma'am, I'm going to hand you what is marked as Exhibit D.  It is a collection of documents -- I guess a better word may be receipts of proof of payments made by you in this case.

MR. HUNKINS:  And the only one that is not Bates stamped is that one that we produced last night.  Do you see that?

MR. CHRISTIAN:  Yes.

Q    (By Mr. Hunkins) Okay.  Ma'am, I will represent to you -- and you can go through and do the math if you would like -- or we can do it if you'd like -- but the total of every document in here comes to $9,365.75.

guessing?

A    I'm guessing.

Q    Okay.  As you sit here today you cannot tell me -- you -- you cannot produce anything, show anything, that disputes my claim that you've paid a total of $9,365.75.  Correct?

A    I don't know.

Q    That document at home could add up to this exact same amount.  Right?

A    I don't know.

Q    Do you -- would you like us to go through -- I'll -- here, I'll -- we'll do that. We'll go through and add up every single one of these entries.  Okay?

MR. CHRISTIAN:  Dan, can we go off the record for a second?

MR. HUNKINS:  Yeah.

(Off the record at 10:29 a.m.)

(On the record at 10:34 a.m.)

Q    (By Mr. Hunkins) All right, ma'am.  So I'm going to go through Exhibit D -- see if I can mark this so I don't keep asking you.  And we're going to go through each of those.  And I'm going to calculate it on my computer.

And you have the computer in front of you.

Right?

A   **Okay.**

Q   And you can see what numbers --

A   **Right.**

Q   -- I'm putting in.  Right?

A   **Yeah.**

Q   Okay.  So the first one is $250.  Correct?

A   **Yes.**

Q   That's a cash payment.  Correct?

A   **Yes.**

Q   Plus another $250 cash payment.  Correct?

A   **Yes.**

Q   Plus $150 money order.  Correct?

A   **Yes.**

Q   Plus a $234.55 garnishment check.

Do you see that?

A   **Yes.**

Q   The next one is in the amount of $202.97.

Correct?

A   **Yes.**

Q   The next one is $242.68.  Correct?

A   **Yes.**

Q   The next one is $259.63.  Correct?

A   **Yes.**

Q   The next one is $196.90.  Correct?

A        Yes.

Q        The next one is $192.97.  Correct?

A        Yes.

Q        The next one is $169.74.  Correct?

A        Yes.

Q        The next one is $289.57.  Correct?

A        Yes.

Q        The next one is $261.46.  Correct?

A        Yes.

Q        The next one is $220.58.  Correct?

A        Yes.

Q        The next one is $262.21.  Correct?

A        Yes.

Q        The next one is $231.10.  Correct?

A        Oh, I got 200 -- oh, wait --

         (Reporter caution.)

A        Oh, yes.  Right.  Yes.

Q        (By Mr. Hunkins) We're on -- we're on Bates stamp --

A        Yes.

Q        -- 107.

A        Yes.

Q        Okay.  The next one is $273.49.  Correct?

A        Yes.

Q        The next one is $242.83.  Correct?

A   Yes.

Q   The next one is $237.  Correct?

A   Yes.

Q   The next one is $249.56?

A   Yes.

Q   The next one is $249.74?

A   Yes.

Q   The next one is $250.85.  Correct?

A   Yes.

Q   The next one is also $250.85.  Correct?

A   Yes.

Q   The next one is $251.89.  Correct?

A   Yes.

Q   The next one is $231.45.  Correct?

A   Yes.

Q   The next one is $233.48.  Correct?

A   Yes.

Q   The next one is $246.64.  Correct?

A   Yes.

Q   The next one is $251.98.  Correct?

A   Yes.

MR. CHRISTIAN:  I believe the next one is on -- is on 121.

MR. HUNKINS:  Got it.  Thank you.

Q   (By Mr. Hunkins) So we are now on

Defendant 0121, and that is $253 and -- strike that.

$253.37. Correct?

A    Yes.

Q    The next one is $176.19. Correct?

A    Yes.

Q    The next one is $214.96. Correct?

A    Yes.

Q    The next one is $247.28. Correct?

A    Yes.

Q    The next one is $182.71. Correct?

A    Yes.

Q    The next one is $239.28. Correct?

A    Yes.

Q    The next one is $248.96. Correct?

MR. CHRISTIAN:  Objection, misrepresentation.

MR. HUNKINS:  I don't know -- wait a minute.

MR. CHRISTIAN:  On 127?

MR. HUNKINS:  What did I say?

MR. CHRISTIAN:  You said 248.96.

MR. HUNKINS:  Thank you.

Q    (By Mr. Hunkins) The next one is $245.96. Correct?

A    Yes.

Q    Thank you.

The next one is $191.33.  Correct?

A    **Yes.**

Q    The next one is $230.10.  Correct?

A    **Yes.**

Q    The next one is $205.39.  Correct?

A    **Yes.**

Q    The next one is $226.97.  Correct?

A    **Yes.**

Q    The next one is $79.50.  Correct?

A    **Yes.**

Q    The next one is $102.22.  Correct?

A    **Yes.**

Q    The next one is $97.45.  Correct?

A    **Yes.**

Q    The next one is $87.01.  Correct?

A    **Yes.**

Q    The next one is $101.37.  Correct?

A    **Yes.**

Q    The next one is $154 -- or strike that.

The next one is $100.54.  Correct?

A    **Yes.**

Q    And that comes to a total -- looking at what we've marked as Exhibit D -- to $9,365.75.  Correct?

**A** Yes.

**Q** Okay. And, ma'am, as you sit here today you can't tell me that you've paid more than $9,365.75. Correct?

**A** I don't know.

**Q** You're not aware of any document showing that you've paid more than that. Correct?

**A** I don't know.

**Q** The only documents that you have are the documents that we just went through. Correct?

**A** I -- what's in front of me.

**Q** What's in front of you. Correct?

**A** I don't know.

**Q** You would agree that the documents we just went over, the receipts we just went over, came to $9,365.75. Correct?

**A** Yes.

**Q** Okay. You watched me do the math.

**A** Yes, I did.

**Q** Okay. Earlier you mentioned that you went to your company and to the courthouse. Correct?

**A** Yes.

**Q** What courthouse did you go to?

**A** Perryville.

**Q** Do you recall when that was?

Q    -- than the time you went in and talked to him?

A    **I don't know.**

Q    Well, it's your allegation.

A    **Uh-huh.**

Q    So is there any basis in that allegation?

A    **Yeah.  There is basis in that allegation.**

Q    Okay.

A    **I did call.**

Q    Okay.

A    **Several times.**

Q    And what number did you call from?

A    **My cell phone.**

Q    Okay.  And was this before or after your meeting in June or July of '21?

A    **After.**

Q    Okay.  And do you recall how long after?

A    **A couple weeks.**

Q    A couple weeks after the -- the meeting in June --

A    **Yes.**

Q    -- or July of '21?

A    **Yes.**

Q    Okay.  And what was the purpose of the follow-up?

**A** To see if things -- anything was going to be done about it.

Q Anything going to be done about what?

**A** The things not adding up.

Q Okay.  What do you mean by things?

**A** The garnishment not adding up.

Q In what way?

**A** Just in the calculations that my husband and I did, they were not adding up.  And I went to his office to have a sit-down talk with him, him and my husband and I, and got nothing.

Q Okay.  So this -- that was for the meeting in June or July of '21.  Right?

**A** Yeah.  I'm not sure of the date, but there was a meeting.

Q You and your husband went and tried to talk to Rob.  Correct?

**A** Yes.

Q And you can't tell me as you sit here today any conversation, specific conversation, you had with Rob.  Correct?

**A** Other than it not adding up and -- no, I really can't.

Q Okay.  And you can't tell me what Rob told you.  Correct?

**A**   Well, I can, but --

Q   Oh, earlier you told me you couldn't.

**A**   Well, okay.  I won't.

Q   So you don't have any -- okay.

And then -- then you follow up a few times later --

**A**   Yes.

Q   -- on -- attempt to call his office, I guess?

**A**   Yes.

Q   Okay.  How many times?

**A**   Probably two or three.

Q   Okay.  And that was within a couple weeks after the meeting?

**A**   After the meeting, yes.

Q   What was the purpose of the follow-up?

**A**   To see if they were going to do any investigation on how much was this garnishment.

Q   And so this would have been in, what, August, September of '21?

**A**   I'm not sure on the date.

Q   Okay.

**A**   It just happened.

Q   What is it that you believe my client did wrong?

A    Yes.

Q    Okay.  In your -- well, strike that.

As you sit here today you would agree that you can't tell me how the garnishment applications altered any of your decisions with regard to the debt at issue.  Correct?

A    Correct.

Q    Okay.  In your discovery you -- you mentioned that you felt harassed.

In what way did you feel harassed?

A    I don't know.

Q    Okay.  In your discovery you state that you felt oppressed.

In what way did you feel oppressed?

A    I don't know.

Q    Did you ever seek any medical treatment for anxiety or things of that nature as the result of this --

A    No.

Q    -- debt?

A    No.

Q    Okay.  Not something you suffer from.  Correct?

A    No.

Q    That's correct?

A     That's correct.

Q     Okay.  And I apologize.  If you go back to Exhibit A, you -- I think I asked you this, but I want to make sure -- you would agree that the debt plus cost that you agreed to pay, not including interest, was $9,351.14.  Correct?

A     Say that again.  Oh, right there.  Okay.

MR. CHRISTIAN:  I'm going to object to misstatement.  What interest are we talking about here?

Q     (By Mr. Hunkins) You -- strike that.

Let me ask you this:  You agreed that you -- you agreed to pay $9,351.14.  Correct?

A     Correct.

Q     Okay.  And you also -- we -- we went over this earlier -- but you agreed that if you did not make your payments as agreed upon in this judgment, that ███████████████████████ retained the right to take all actions authorized by law. Correct?

A     Correct.

Q     Okay.  And that would include collecting a 9 percent interest per annum as authorized under law.  Correct?

A     I --

really didn't know how to respond to how that had occurred in this case.

A    Right.

MR. HUNKINS:  Object to the form. Misstates her testimony.

Q    (By Mr. Christian) On the day that you did go and see Mr. Huelskamp in his office, regardless of when it was, why -- what was the impetus for you to go in that day and speak with him?

A    Because it'd been going on -- the garnishment had been going on for several years, and I -- and it was about time to be done.  And when my husband and I went there, it was obvious to us that it was not going to be done and the math didn't add up.  And, then, I was getting nowhere with Mr. Huelskamp because I guess he didn't care.  He actually said most people don't come in here and question this.

Q    And when you say the math didn't add up, did you have a sheet of paper that you were making notes on?

A    No.

Q    Or -- just for clarity, was the answer no to that?

A    Sorry, yes.  No.

Q    And so when you say the math didn't add up, where were you performing the math?

**A    My husband was performing the math, I actually was not.**

Q    Okay.

MR. CHRISTIAN:  Okay, Ms. Essmyer, I have no more questions at this time.  I'm going to turn it over to Mr. Huelskamp's attorney just to see if he has any final follow-ups.

MR. HUNKINS:  I do.  I have some questions.

EXAMINATION

FURTHER QUESTIONS BY MR. HUNKINS:

Q    Multiple times while I was asking you questions I asked if you could recall any conversation you had with Mr. Huelskamp when you went and spoke with him.

Do you recall me asking those questions?

**A    Yes.**

Q    Okay.  And you told me you couldn't remember any of those, any conv -- specific conversations you had.  Correct?

**A    Yes.**

Q    Okay.  And now when your attorney asked you questions, you recall specific conversations you

had with Mr. Huelskamp.  Correct?

A    Yes.

Q    Okay.  And -- and those conversations are what?  What -- what do you recall Mr. Huelskamp telling you?

A    **Basically nothing, and most people don't come in and ask about the garnishments and how much longer.**

Q    How did you come to remember that in the --

A    **I had --**

Q    -- short time frame?

A    **I'm being a little confused about stuff, so it took me a little bit to remember.**

Q    What -- what are you confused about?

A    **I was a little confused about some questioning, so I was replaying it in my mind.  And, yes, I had a conversation with him.**

Q    You recall at the beginning of the deposition I asked if any of my questions are confusing, that you need to let me know that.

You recall that?

A    **And I did.**

Q    Okay.  Well, you didn't.

A    **Well, I did once.  But, yes.**

Q    Other than what you've said now after meeting with your lawyers, anything else that you can remember --

A    No.

Q    -- with regard to your conversation with Mr. Huelskamp?

A    **Basically, my husband and I went in there. My husband told him the math did not add up.  He could basically care less about it.  And that was it.**

Q    And what was the math at that time?

A    **I -- I don't remember.  Like, my husband is the one that is pretty good with math.**

Q    So your husband was dealing all that -- dealing with all that?

A    **He was with me at his office talking to him.**

MR. HUELSKAMP:  He wasn't there.

THE WITNESS:  Uh-huh.  He sure was.

Q    (By Mr. Hunkins) Is ████ still employed by ██?

A    **Yes.**

Q    Okay.  Has he ever been let go?

A    **No.**

Q    The math wasn't adding up, I mean,